**STATE of Minnesota, Respondent,**

v.

**Duane James TUTTLE, Appellant.**

**No. C5–92–2428.**

Court of Appeals of Minnesota.

Aug. 3, 1993.

Hubert H. Humphrey, III, Atty. Gen. Robert A. Stanich, Spec. Asst. Atty. Gen., St. Paul, John K. Carlson, County Atty., Pine City, for respondent.

Thomas J. Ryan, Daniel R. Bina, Gary P. Saenger, Ryan, Bina & Hass, Pine City, for appellant.

Considered and decided by HARTEN, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HARTEN, Judge.

Appellant Duane James Tuttle contends that the district court erred in denying his motion to withdraw his plea of guilty to the charge of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343, subd. 1(h)(v) (1990). We affirm.

## FACTS

Tuttle is the stepfather of the complainant in this case. On December 15, 1991, the mother of complainant's girlfriend reported to the sheriff's department that the then twelve year old complainant had told the girlfriend that she was being sexually abused by Tuttle. The next day, in a taped interview conducted by the sheriff's department, complainant related that Tuttle had been sexually abusing her. Complainant's younger sister, then age seven, was also interviewed. She confirmed complainant's report that complainant had told her about the abuse and that complainant had warned her to stay away from Tuttle. On December 31, 1991, in a videotaped interview at Midwest Children's Resource Center, complainant gave a consistent report of abuse.

When an investigator and a sheriff's deputy went to Tuttle's home on December 16, 1991, Tuttle's first reaction to being told of the complainant's report of abuse was to say that the complainant must be talking about her father (Tuttle's wife's former husband). Tuttle was taken into custody. Although he initially declined to give a statement without first consulting an attorney, he later asked to be interviewed. After being re-read his *Miranda* rights, Tuttle said he understood those rights and wished to waive them. He admitted sexually abusing complainant.

On December 30, 1991, a complaint was filed charging Tuttle with three counts of criminal sexual conduct in the second degree. On January 30, 1992, after waiving an omnibus hearing, Tuttle entered a plea of guilty to one count of the complaint, with an agreement that he would receive a stayed sentence if he was found amenable to treatment. When the district court said

that it would allow Tuttle to withdraw his plea if he was found unamenable to treatment, the state informed the district court that the negotiated agreement was that Tuttle would *not* be allowed to withdraw his plea if found unamenable to treatment; rather, he would receive a sentencing guidelines presumptive sentence. Upon inquiry by the district court, Tuttle said he accepted those terms.

As part of a presentence investigation (PSI), Tuttle was given sex offender and psychological evaluations in March and April 1992. In the June 11, 1992 PSI, the evaluators reported that Tuttle admitted guilt, showed remorse and appeared amenable to treatment.

Meanwhile, Tuttle's wife wrote to the presentence investigator on February 21, 1992, saying that albeit Tuttle admitted guilt, she loved him and did not want him to go to jail. In mid-April 1992, Tuttle's wife became convinced that complainant had been abused by her former husband (complainant's father), rather than by Tuttle. In early June 1992, Tuttle's wife contacted the county attorney's office and said she had reason to believe that the abuse was committed by her former husband. Later, Tuttle's wife indicated that on June 21, 1992 complainant had told her that the abuse had been committed by complainant's father.

On June 25, 1992, Tuttle retained a private attorney to substitute for his public defender. On June 26, 1992, the substitute counsel filed a motion to withdraw Tuttle's guilty plea.

On July 16, 1992, an affidavit by complainant was filed. She recanted her allegations against Tuttle, and stated that the abuse was committed by her father. Tuttle filed an affidavit claiming his tape-recorded confession was the result of coercion. Tuttle's motion to withdraw came before the district court on September 14, 1992. The district court continued the matter pending a psychological evaluation of complainant.

On October 13, 1992, a licensed psychologist reported the results of his evaluation of complainant. He concluded that complainant's recantation was the result of intense indirect pressure by her family. He also concluded that her additional allegations against her father should be taken seriously.

On October 29, 1992, the district court denied Tuttle's motion to withdraw his guilty plea. The district court said:

> Coupling the fact that he knew the jeopardy he placed himself in by his plea of guilty with the fact that the recantation of this victim makes absolutely no sense in terms of the quality of the two stories that she's alleged to have told, the first being that the defendant did it, she tells a very good friend of hers that the defendant did it, provided some detail, then * * * she comes up with a rather nebulous statement that her natural father did it, as the second story.

> There is nothing very compelling about the recanted statement. Case law in Minnesota has been skeptical at best toward recantations of child sexual victims. There certainly is no case law that says when a child sexual abuse victim recants, that her second story should be given preference over her first one. As a matter of fact, case law goes the other way and says one should be very cautious about accepting recantations on the part of victims, given the natural pressures that are brought to bear on them, intentionally or otherwise.

> The criteria for withdrawing a plea of guilty before sentencing is whether it is just to do so, as simple as that. I think it's just to do so when there is actual evidence which comes to light which countervails the defendant's guilt. Here there isn't. It's more of a cold-feet feature than anything else.

> And so, since I * * * see nothing concrete that would cause it to be just to grant the motion, I'm denying the motion to withdraw the plea.

The district court formally accepted Tuttle's guilty plea and adjudged him guilty of violating Minn.Stat. § 609.343, subd. 1(h)(v) (1990). The district court im-

posed an executed 48 month sentence, the guidelines' presumptive sentence.

## ISSUES

1. Did the district court abuse its discretion in denying Tuttle's motion to withdraw his guilty plea?

2. Did the district court impermissibly interject itself into the plea negotiations?

3. Did Tuttle have ineffective assistance of counsel?

## ANALYSIS

### Introduction

Minn.R.Crim.P. 15.05 provides two bases for withdrawal of a guilty plea. *State v. Kaiser*, 469 N.W.2d 316, 319 (Minn.1991). Under subdivision 1, a defendant, upon timely motion, has a *right* to withdraw his guilty plea at any time, *before or after sentence* if the defendant can establish at the hearing on the motion to withdraw * * * that withdrawal is necessary to correct a manifest injustice. [*Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989)]. However, under subdivision 2 a defendant, *in the [district] court's discretion*, may be allowed to withdraw his guilty plea only if the defendant has not been sentenced and only if it is "fair and just" to do so. *Id.* *Kaiser*, 469 N.W.2d at 319 (emphasis in original).

■ In this case, the district court did not base its ruling on the "manifest injustice" standard. Nonetheless, we are satisfied, based on the district court's finding that Tuttle did not produce evidence that overcame the previous strong evidence of guilt, that Tuttle "did not establish that withdrawal was necessary to correct a

manifest injustice." *Kim*, 434 N.W.2d at 266; *see also Kaiser*, 469 N.W.2d at 319 (remanding for factual findings on claims alleged to give rise to manifest injustice).

■ Accordingly, we review Tuttle's claims under the "fair and just" standard applicable when a withdrawal motion is made prior to sentencing. *See* Minn. R.Crim.P. 15.05, subd. 2. Under that standard, the "ultimate decision is left to the sound discretion of the [district] court." *Kim*, 434 N.W.2d at 266. Furthermore, the district court "will be reversed only in the rare case in which [we] can fairly conclude [it] abused its discretion." *Id.* Under the facts of this case, we cannot say that the district court abused its discretion in denying Tuttle's motion to withdraw.[1]

1. Tuttle argues that the plea agreement was for him to receive a stayed sentence if he was amenable to treatment. He asserts that when the district court determined that he did not qualify for a stayed sentence, he should have been allowed to withdraw his plea. We disagree.

The record clearly sets forth the agreement: Tuttle would not be able to withdraw his plea if he was not a qualified candidate for treatment. At the plea hearing, when the district court asked Tuttle if he still wanted to go forward with his plea knowing that if he did not qualify for treatment he could receive an executed 48 month sentence, Tuttle answered, "yes."

■ Tuttle also argued in district court that the recantation and his claim of innocence created a jury question. On appeal, Tuttle suggests that he should be allowed to withdraw his plea because it was based on a mistaken apprehension of the strength of the state's case. We find no merit in

---

**1.** Although not raised by Tuttle, we are mindful that a defendant cannot simultaneously argue (a) that it is a manifest injustice to bind him to a plea of guilty in the face of evidence of innocence that has emerged subsequent to the entry of his plea; and (b) that he qualifies for a probationary sentence because he will benefit from treatment. Here, however, Tuttle did not seek review of the district court's denial of his motion for a stay of sentencing pending appeal to this court and did not seek a stay from this

court pending appellate review of the district court's determination that Tuttle did not meet his burden of showing evidence that effectively neutralized his admission of guilt. Had he done so, he first could have litigated whether it was a manifest injustice to bind him to his plea before he was obliged to adopt a position on sentencing. Furthermore, in this appeal, Tuttle does not expressly argue that the recantation is grounds for withdrawal of his plea.

these contentions. Tuttle is not seeking reversal of a jury's verdict; his guilt was established by "his own plea of guilty, which was based on an admission of guilt and on a statement that he was pleading guilty because he was guilty." *State v. Risken*, 331 N.W.2d 489, 490 (Minn.1983). The record presents a person who acknowledged his guilt, was remorseful and actively wanted treatment to learn to control his impulses.

■■■ Finally, Tuttle argues that he should have been allowed to withdraw his plea because it was not "accepted" by the district court until after his motion to withdraw was denied. Again, we disagree. Tuttle points to language in his plea petition that provides that he would "stand trial on the original [charges]" if his plea was "for any reason not accepted by the [district court]." Minn.R.Crim.P. 15.04, subd. 3(1), however, gives the district court authority to reserve acceptance of a plea pending a PSI; it does not give a defendant an absolute right to withdraw a plea pending acceptance by the court. *See State v. Knight*, 292 Minn. 419, 423, 192 N.W.2d 829, 832 (1971) ("one who has entered a plea of guilty * * * does not have the absolute right to withdraw it"); *see also Kim*, 434 N.W.2d at 266 ("an absolute right to withdraw a plea before sentencing would undermine the integrity of the plea-taking process"). Where, as here, the sentence is "an essential element of the agreement," there is no basis on which to withdraw the plea if the district court's sentence is in accordance with the plea agreement. *See id.* at 267.

■■■ 2. We also find no merit in Tuttle's claim that the district court impermissibly interjected itself into the plea negotiations. *See State v. Moe*, 479 N.W.2d 427, 430 (Minn.App.1992) (district court not to "par-ticipate directly in plea agreement negotiations"), *pet. for rev. denied* (Minn. Feb. 10, 1992). The district court made it clear to Tuttle that he would have to be accepted into treatment to get a stayed sentence and that he would not be allowed to withdraw his plea if found unamenable to treatment. In so doing, the district court was acting properly in furtherance of its duty to elucidate the terms of the negotiated agreement. *See State v. Tyska*, 448 N.W.2d 546, 550 (Minn.App.1989).

We do not agree with Tuttle that it is significant that the district court required Tuttle to be "accepted" into treatment, not simply "amenable" to treatment, to qualify for a stayed sentence.[2] We decline to hold that one who denies guilt is thereby unamenable to treatment. Nonetheless, Tuttle no longer admits he needs treatment and makes no claim that he wants treatment. It was not unreasonable for the district court to disqualify him for a stayed sentence because unamenable to treatment. Therefore, his failure to meet the higher standard of having been accepted into treatment is irrelevant.

■■■ 3. Tuttle's ineffective assistance of counsel claim was not raised in district court. *See State v. Cermak*, 350 N.W.2d 328, 332 n. 5 (Minn.1984) (district court in best position to judge effectiveness of representation). It also clearly fails on the merits. The record does not support Tuttle's claim that he has diminished mental capabilities.[3] Furthermore, representation of Tuttle by the public defender met "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Finally, the record shows that the public defender was acting in Tuttle's best interests.[4] *See Saliterman v. State*, 443

---

2. For the first time at oral argument, Tuttle appeared to suggest that the evidence is insufficient that he is unamenable to treatment. He pointed out that the PSI, which was prepared before the recantation, found him amenable to treatment. It is inescapable, however, that the PSI assessment was based on his admission of guilt.

3. The PSI notes Tuttle's indication that he had completed the 11th grade and was in the process of getting his G.E.D.

4. Tuttle contends that he always maintained his innocence and that he "contrived" the factual basis for his plea based on the pre-recantation statements of the complainant. However, these claims are contradicted by his early expression of a desire to go into treatment and his insis-

N.W.2d 841, 843–44 (Minn.App.1989) (where record indicates defense counsel obtained favorable plea bargain terms, informed the defendant of the terms of the agreement and advised him of the rights he was waiving, "the evidence supports a finding of effective representation"), *pet. for rev. denied* (Minn. Oct. 13, 1989).

## DECISION

The district court did not abuse its discretion in refusing to allow Tuttle to withdraw his plea of guilty prior to formal acceptance of the plea by the district court pursuant to Minn.R.Crim.P. 15.04, subd. 3(1).

**Affirmed.**

tence that certain elements of the complainant's statements were incorrect (she said the abuse had gone on for four years, he said two; she said he had ejaculated, he said he had not; she said some abuse occurred outdoors, he said it never had).