*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0177P (6th Cir.)
File Name: 01a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 99-6631

STATFORD ROBERT MADER,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-00019—Todd J. Campbell, District Judge.

Argued: March 8, 2001

Decided and Filed: May 31, 2001

Before: KRUPANSKY, BOGGS, and BATCHELDER,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** R.N. Bo Taylor, TAYLOR & SCHECHTER, Goodlettsville, Tennessee, for Appellant. William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** R.N. Bo Taylor, TAYLOR & SCHECHTER, Goodlettsville, Tennessee, for Appellant. Debra Teufel Phillips, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

1

---

**OPINION**

---

KRUPANSKY, Circuit Judge.    Defendant-Appellant Statford Robert Mader has appealed from his conviction entered after his plea of guilty, arguing that the lower court abused its discretion when it refused to grant his motion to withdraw his guilty plea even though the plea had not been accepted by the court and that, in the alternative, Mader had offered fair and just reasons for withdrawal of the plea.

In September, 1988, Mader acquired a federal firearms license, which allowed him to legally engage in the business of selling firearms.    In May, 1994, Mader voluntarily surrendered his federal firearms license. Nevertheless, Mader continued to buy and sell large numbers of weapons.  The government has contended that Mader bought and sold over two hundred weapons between 1994 and 1998; Mader has disputed that amount, arguing that he bought and sold approximately ninety weapons during that time period. Regarding Mader's *modus operandi*, the government has contended that Mader would transfer his acquired weapons to Richard Jason Graham for re-sale at gun shows.  Mader and Graham would then divide the realized profit.    The government has contended that many of the weapons came to be possessed by persons prohibited from possessing firearms. In particular, a firearm sold by Mader was found at the scene of a murder of a Tennessee policeman, Officer Paul Scurry.

On June 1, 1997, the Nashville Police Department was informed that unidentified persons were selling firearms behind a residence in East Nashville.  When the officers arrived, they found Mader and certain of his associates in possession of fourteen firearms.  Mader claimed that he was waiting for a person with whom he would trade the weapons for jewelry.[1]

---

[1] Mader and his wife owned a jewelry store in Nashville, Tennessee.

guilty.[10] He replied in the affirmative. Mader has argued that he misled the court with that answer because, while he had committed the acts listed in the indictment, he did not think that his acts constituted crimes. Given that Mader has never denied that he committed the acts underlying the charges against him, it was not an abuse of discretion for the lower court to deny his motion to withdraw his guilty plea.

Having concluded that the defendant was required to offer a fair and just reason for withdrawal of his guilty plea even prior to acceptance of such plea by the district court, and that the district court did not abuse its discretion in finding that the defendant had not offered a sufficient reason, we **AFFIRM** the district court's denial of his motion to withdraw his guilty plea.

---

[10]Mader challenged numerous statements in the factual basis offered by the government. The lower court permitted Mader to speak at length in correcting the perceived errors. Mader has argued that his challenging of the factual basis demonstrates that he did not believe he was guilty at the time he pled guilty. Review of the plea hearing transcript makes clear however that Mader wished to leave the court with the most accurate description of his transgressions. Mader did not deny that he committed acts sufficient in their nature and scope to serve as the factual basis for his guilty plea; he merely denied the characterization of some of the acts.

In October, 1997, working with a confidential informant, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") contacted Mader about purchasing a silencer. Mader referred him to Graham. However, Graham was unable to help the informant acquire a silencer. Subsequently, in December, 1997, the informant purchased a firearm from Mader. At that time, the informant advised Mader that he had served time in prison. In January, 1998, the informant purchased an additional weapon from Mader, after again discussing his felony record with Mader.

Mader was indicted on February 24, 1999 for engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A),[2] and for selling a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d). On June 23, 1999, six days before his scheduled trial date, Mader reached a plea agreement with the government. On June 28, 1999, after a hearing conducted pursuant to Federal Rule of Criminal Procedure 11,[3] Mader

---

[2]Graham was also indicted on this count which included a charge of aiding and abetting violations of 18 U.S.C. § 922(a)(1)(A) in transgression of 18 U.S.C. § 2.

[3]Rule 11 provides in relevant part:

(c) **Advice to Defendant**. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self- incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement; and

(6) the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence.

(d) **Insuring That the Plea is Voluntary**. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

...

(f) **Determining Accuracy of Plea**. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as

murderer of the policeman had in fact jammed at the scene.[9] Moreover, he had consistently contended–as was confirmed later–that he had not sold the weapon to the murderer. As the lower court found, the only new information contained in the presentence report was the admission by the government that the weapon had not been sold by Mader directly to the murderer. Mader has admitted that his counsel had informed him that it was unlikely that the government would prevail on the issue. Mader has maintained that the presentence report was significant because he wanted to be "certain" that the sentencing court would not apply the enhancement when determining his sentence. In so doing, Mader reweighed the costs and benefits of his plea after receiving the presentence report; rejection of such a reassessment as justification for plea withdrawal is not an abuse of discretion. *See United States v. Pluta*, 144 F.3d 968, 974 (6th Cir. 1998).

Mader has also claimed that he has maintained his innocence throughout the proceedings. His wife and a close friend, William Murray, testified that Mader had repeatedly expressed his feeling that he was innocent, but that he resolved to plead guilty because of the threat of the sentencing enhancement. Mader's protestations of innocence rest on the conviction that his gun-selling activity was a *hobby* not a business for profit. However, Mader has not denied that he repeatedly sold weapons for profit; he has merely denied that this activity was criminal. Mader was asked in open court when he submitted his plea of guilty whether he was in fact

---

[9]Mader supplemented the record on appeal in an attempt to dispel the lower court's finding that pre-plea disclosures made him aware of the fact. He has provided to the court complete copies of the pre-plea disclosures. He has argued that the disclosures did not reasonably inform him that the gun was not used in the murder. This contention is unpersuasive. The disclosures make clear that the gun was found jammed at the scene. A reasonable inference from that disclosure would be that the gun was not used to kill the officer. At the very least, Mader was aware at the time of sentencing that the government would have confronted difficulty in its quest to convince the sentencing judge otherwise.

to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted." *Id.* at 1181. "Courts have noted that the aim of [Rule 32(e)] is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* (quotation marks omitted). The defendant has the burden to demonstrate that some fair and just reason exists for withdrawal of his guilty plea. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996). A lower court's decision on a motion to withdraw a guilty plea is reviewed for abuse of discretion. *See United States v. Hunt*, 205 F.3d 931, 936 (6th. Cir. 2000).

Mader has contended that the government's threat to move to enhance his sentence coerced him into pleading guilty. He has also argued that he has consistently expressed his innocence of the charges. He has argued that these circumstances provide the requisite fair and just reasons for withdrawing his guilty plea.[8] Mader's contention as to the enhancement is unavailing. He knew at the time of the plea hearing that the gun which he ostensibly sold to the eventual

---

[8]Mader has also argued that he pled guilty because the government threatened to prosecute his wife for tax evasion and money laundering if he did not. The plea agreement indeed reflects that the government waived prosecution of his wife in return for a plea of guilty. However, Mader has provided no evidence to this court which indicates that prosecution of his wife for these offenses would have been unjustified. Moreover, during the plea hearing, Mader stated under oath that he had neither been threatened nor pressured to enter a guilty plea.

---

pled guilty to both charges in open court. While finding that a factual basis supported the plea, and that Mader's plea was made voluntarily and intelligently, the lower court deferred acceptance of both the plea and plea agreement pending review of the as-yet-unprepared presentence report. On August 9, 1999, the Probation Office furnished the presentence report to the parties. On September 1, 1999, following objections to the report by both parties, a revised presentence report was issued.

On September 30, 1999, Mader moved to withdraw his guilty plea, arguing that because the district court had not yet accepted his guilty plea, he was entitled to withdraw his guilty plea without offering any justification. In the alternative, Mader argued that he should be able to withdraw his plea because he had been coerced into pleading guilty, by reason of the government's representation that it would move for enhancement of his sentence under the Federal Sentencing Guidelines[4] because he had sold a weapon to a person who

---

shall satisfy it that there is a factual basis for the plea.

FED. R. CRIM. P. 11. Mader has not challenged the validity of the plea on grounds that the change of plea hearing violated Rule 11.

[4]The relevant provision, U.S.S.G. § 2K2.1(c), provides:

(1)  if the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply

(A)  §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; or

(B)  if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

used the weapon to murder a Nashville policeman. Mader argued that the presentence report disclosed that, in fact, he had not sold the weapon to the murderer. Mader asserted therefore that the representation by the government had misled him into accepting culpability for an act which he did not commit. In response, the government contended that Federal Rule of Criminal Procedure 32(e)[5] controlled, requiring Mader to offer some fair and just reason for his plea withdrawal. The government contended that, prior to the plea hearing, it had provided Mader with disclosures which indicated that the government had determined that the gun in question had not been used to kill the policeman but rather had been found "jammed" at the scene.

On October 13, 1999, the district court conducted a hearing on Mader's motion to withdraw his guilty plea. Mader, Mader's wife and William Murray (a friend of Mader's), testified that Mader had at all times expressed his innocence of the charged activity; he had described his firearms distribution activities as a mere hobby as opposed to a livelihood, which he had characterized as non-punishable under the law. They related Mader's recalcitrance in pleading guilty, his efforts in open court during the change of plea hearing to feign guilt by admitting the acts with which he was charged while inwardly expressing disbelief that the acts

---

Had the government pursued this enhancement, it would presumably have argued that Mader had knowledge that the weapon he had ostensibly supplied to the murderer of the policeman would be used in conjunction with a criminal offense.

[5]Rule 32(e) provides:

**Plea Withdrawal**. If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn *if the defendant shows any fair and just reason*. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

FED. R. CRIM. P. 32(e) (emphasis added).

This court holds that the defendant must provide a fair and just reason to support withdrawal of his guilty plea, even when that plea has not yet been accepted by the district court. As the facts in Mader's case demonstrate, this requirement is consistent with the significance of the plea proceeding and the safeguards offered by Rule 11. Mader was questioned under oath about whether he understood the charges against him and the facts in support of these charges. Mader challenged numerous aspects of the factual basis offered by the government, but ultimately acknowledged that he committed the charged offenses. In addition, consistent with Rule 11, the court advised him of the constitutional rights which he waived by pleading guilty. For this court to find that Mader could subsequently withdraw his plea of guilty "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677.[7]

Having found that Rule 32(e)'s requirement of a fair and just reason to support withdrawal of a guilty plea applies even when the court has not accepted the plea, this court must determine whether Mader had provided such a reason. In *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995), this circuit collected the factors which guide Rule 32(e) inquiries: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure

---

[7]The Advisory Committee Notes to Rule 11 emphasize the seriousness of entering a plea:

Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment."

*plea*, the Court of Appeals would allow the defendant to withdraw his guilty plea simply on a lark.

*Hyde*, 520 U.S. at 676 (emphasis added). Mader's reliance on the italicized language is misplaced. The *Hyde* Court was not presented with the instant situation; its invocation of the acceptance of the plea by the court before Rule 32(e) was not necessary to its decision.[6]   This dicta therefore is not controlling in this case.

Nevertheless, the Ninth Circuit has relied on this dicta to reaffirm its pre-*Hyde* holding that no reason was necessary to withdraw a plea before its acceptance by the court. *See United States v. Alvarez-Tautimez*, 160 F.3d 573, 576 n.5 (9th Cir. 1998) ("Our holding in *Washman* has not been undercut by *United States v. Hyde*. In *Hyde*, unlike in *Washman*, the guilty plea–but not the plea agreement–had been accepted by the trial court. *Hyde* does confirm that the requirement in Fed.R.Crim.P. 32(e), that a 'fair and just reason' must be shown in order to withdraw a guilty plea, does not apply until *after* the plea has been accepted by the court."). The Fifth and Eighth Circuits have found otherwise, concluding that a fair and just reason is indeed necessary to support withdrawal of a guilty plea, even prior to the court's acceptance of that plea. *See United States v. Grant*, 117 F.3d 788, 791 (5th Cir. 1997) ("We believe that the Supreme Court's reasoning in *Hyde* applies with equal force here. ... Allowing Grant to withdraw his plea without fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas."); *United States v. Payton*, 168 F.3d 1103, 1105 (8th Cir. 1999) ("Rule 32(e) sets the applicable standard prior to sentencing, and the fact that the court had not yet formally accepted the plea is not determinative. Under the rules a defendant has an absolute right to withdraw his plea if the court ultimately rejects the plea agreement, but otherwise he must show a fair and just reason.").

---

[6]The *Hyde* Court was merely pointing out the circumstances of the plea involved in that case.

could be criminal, and his surprise upon reading the revised presentence report's section on the policeman's death which appeared to exonerate Mader of any possible responsibility. Mader had then determined that he had been misled by the government into believing that he would have been subject to the enhancement. After consultation with his court-appointed counsel, he had decided to withdraw his plea.

After hearing this evidence, the lower court rejected the motion to withdraw, finding that Mader was required to offer a fair and just reason for withdrawal of his guilty plea and that he had not done so. As to the claim that Mader had recently learned of the fact that the government would be unable to pursue an enhancement against him for the murder of a Nashville policeman, the district court judge noted that:

> There has been some discussion regarding the gun and whether it was used by Mr. Swafford to kill Officer Scurry. However, it is undisputed that the defendant received discovery prior to the plea that showed that the subject gun did not shoot Officer Scurry but was found at the scene of the killing with other weapons. So, the fact that the subject gun was not used to kill Officer Scurry [was] not new information that became known after the plea and, in fact, was information known to the defendant prior to that plea. At the plea hearing at page 47 the defendant contested the government's factual claim which was at page 27 that Mr. Mader had allegedly told Mr. Graham that he sold the subject gun to Mr. Swafford. Thus it was clearly contested at the plea hearing by Mr. Mader and, again, it wasn't one of the elements of the offense. In fact, the defendant was apparently correct on this issue.

The court further noted that

> the only thing that is new subsequent to the plea hearing is that the government has learned that Mr. Mader sold the disputed gun to Chris Rose who in turn sold it to Mr. Swafford instead of Mr. Mader selling the gun directly to Mr. Swafford as suggested by Mr. Graham in the pre-

plea hearing disclosures. This particular new evidence goes to an enhancement issue under the guidelines. It doesn't go to the elements of the offense.

The court also specifically found that the government did not mislead Mader regarding its evidence in support of the enhancement in controversy: "The court finds the government did not know about Chris Rose selling the subject gun to Mr. Swafford [as opposed to Mader selling the subject gun directly to Mr. Swafford] until after the plea when Mr. Rose's attorney, Mark Scruggs, advised the government." Accordingly, on October 14, 1999, the lower court denied the motion to withdraw.

On November 10, 1999, Mader was sentenced to sixty months on each count, to be served concurrently. On November 18, 1999, this appeal timely followed. On April 28, 2000, Mader filed a motion to supplement the lower court record with more complete copies of the pre-plea disclosures made by the government. Mader wished to clarify that the pre-plea disclosures had not reasonably informed him of the government's lack of evidence in support of the subject enhancement. The lower court granted that motion on May 17, 2000.

Initially, the government has argued that Mader, via his plea agreement, has waived his right to appeal. The plea agreement provides in pertinent part:

[T]he defendant knowingly waives the right to appeal any sentence within the maximum provided in the offense level as determined by the court or the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever, in exchange for this agreement. Such waiver does not apply, however, to claims of prosecutorial misconduct, ineffective assistance of counsel or if the Court departs upward.

It is well-established that plea waivers are binding. *See United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996).

However, the instant plea waiver facially bars only an appeal from the *sentence*. Mader contends that the validity of his *plea* is doubtful because of the lower court's refusal to grant his motion to withdraw his guilty plea. *See id.* (reviewing the lower court's denial of a motion to withdraw a guilty plea while simultaneously concluding that defendants had waived appeal of the lower court's sentencing decision). Given that the government drafted the plea agreement at issue, this court is reluctant to credit its expansive interpretation of the waiver provision. Mader has not waived his right to appeal the validity of his plea.

Mader has argued that, in light of *United States v. Hyde*, 520 U.S. 670 (1997), Rule 32(e)'s requirement of a fair and just reason does not apply when the court has not yet accepted the guilty plea. Rule 32(e) provides:

**Plea Withdrawal**. If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

Fed. R. Crim P. 32(e). By its terms, Rule 32(e) makes no distinction between pleas which have been accepted and those which have been not. Mader has relied on language in *Hyde* to provide the necessary interpretive leap. The Supreme Court, confronted with a situation where the district court had accepted the plea but had not yet accepted the plea agreement, reversed the Ninth Circuit's holding that the defendant could withdraw his guilty plea for any reason whatsoever:

[T]he Court of Appeals' holding ... debases the judicial proceeding at which the defendant pleads and the court accepts his plea. After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and *after the court has explicitly announced that it accepts the*