On December 21, 2016, S.N. called the police because she saw Nicholas in the area near her home, believed he was violating the OFP, and feared he was going to break into her house. Traverse County charged Nicholas with one count of felony stalking under Minn. Stat. § 609.749, subd. 5(a) (2016), and one count of felony violating an OFP under Minn. Stat. § 518B.01, subd. 14(d)(1) (2016). The violation-of-an-OFP charge was a felony-level offense because Nicholas had previously been convicted of two counts of violating a domestic-abuse no-contact order. On April 27, 2017, Nicholas pleaded guilty to violating the OFP, and the stalking charge was dismissed. The district court deferred accepting the plea until the sentencing hearing and ordered a presentence investigation (PSI).
The district court held a sentencing hearing on September 20, 2017. The same judge who presided over the plea hearing presided over the sentencing hearing. At the sentencing hearing, Nicholas requested, through his attorney, to withdraw his plea because he was innocent and had only pleaded guilty "because [his attorney] threatened him to do so." The district court acknowledged that it should allow Nicholas to withdraw his plea if it was fair and just to do so but ultimately denied his request. At the plea hearing, the district court had asked Nicholas "has anyone made any threats to you, your friends or your family to get you to do this deal," and he had answered "[n]o, sir." In denying Nicholas's plea-withdrawal motion at the sentencing hearing, the district court explained that, in light of what Nicholas had said under oath at the plea hearing, he did not believe Nicholas's claim that he was threatened by his attorney. When the district court made its decision, Nicholas had *289 not yet testified at the sentencing hearing about any supposed threats. Rather, his attorney had relayed the information to the district court.
After disposing of the withdrawal motion and proceeding to sentencing, the district court allowed Nicholas to speak. Nicholas explained that he was maintaining his innocence and that he had not meant that his attorney threatened him but rather that he "was being threatened with prison ... the taking away of-loss of ... life and liberty." He then agreed with the district court's characterization that he felt "coerced by the situation because [he was] facing some bad consequences." The district court then formally accepted Nicholas's guilty plea on the violation-of-an-OFP charge, adjudicated him guilty, dismissed the stalking charge, and imposed a sentence. This appeal follows.
ISSUES
I. Did Nicholas have an absolute right to withdraw his guilty plea prior to it being accepted by the district court?
II. Did the district court abuse its discretion by not allowing Nicholas to withdraw his guilty plea under the fair-and-just standard?
III. Did the district court err by not granting Nicholas an evidentiary hearing on the attorney-coercion allegations?
ANALYSIS
I. Absolute Right to Withdraw a Plea
Nicholas first argues that he had an absolute right to withdraw his guilty plea when he requested to do so at the sentencing hearing. The rules of criminal procedure establish two standards for plea withdrawal. A district court may, in its discretion, allow a defendant to withdraw his plea prior to sentencing if it would be fair and just to do so. Minn. R. Crim. P. 15.05, subd. 2. And a district court must allow a defendant to withdraw his plea at any time to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. In this case, the district court heard Nicholas's guilty plea but postponed accepting or rejecting it until the sentencing hearing, after it had received the results of the PSI, as permitted by Minn. R. Crim. P. 150.04, subd. 3(1). When Nicholas moved to withdraw his plea at sentencing, the district court applied the fair-and-just standard to analyze and ultimately reject his request.
Nicholas acknowledges the manifest-injustice and fair-and-just standards but asks us to nonetheless hold that they do not apply to his case because he made his withdrawal request prior to the acceptance of his plea. He explains that while the rules of criminal procedure indicate when the fair-and-just standard ceases to be applicable-i.e., after sentencing-they are silent as to when the fair-and-just standard begins to be applicable.
Nicholas makes three arguments in support of his position that he had an absolute right to withdraw his guilty plea. First, he argues that his case is distinguishable from State v. Tuttle , 504 N.W.2d 252 (Minn. App. 1993), a case in which we affirmed the district court's denial of a defendant's presentencing motion for plea withdrawal. Second, Nicholas argues that we should recognize an absolute right to withdraw a guilty plea prior to its acceptance so as to be consistent with the federal courts. And third, he argues that a defendant retains his trial rights, including the fundamental right to a presumption of innocence, until his guilty plea is accepted. From this, Nicholas reasons that he retains the absolute right to withdraw his guilty plea until his trial rights are waived upon the acceptance of a valid guilty plea.
*290 Tuttle
We begin by analyzing Tuttle because our understanding of it influences our analysis of Nicholas's other arguments. In Tuttle , the 12-year-old daughter of Tuttle's girlfriend accused him of sexually abusing her. 504 N.W.2d at 254. Tuttle confessed to sexually abusing the girl. Id. He was charged with three counts of second-degree criminal sexual conduct. Id. Tuttle pleaded guilty to one count "with an agreement that he would receive a stayed sentence if he was found amenable to treatment." Id. At the plea hearing, the district court explained that it would allow him to withdraw his guilty plea if he was not found amenable to treatment, but the state clarified that "the negotiated agreement was that Tuttle would not be allowed to withdraw his plea if found unamenable to treatment; rather he would receive a sentencing guidelines presumptive sentence." Id. at 254-55. Tuttle accepted those terms. Id. at 255. Prior to sentencing, Tuttle filed a motion to withdraw his guilty plea, filed an affidavit claiming his confession was the result of coercion, and filed an affidavit from the complainant in which she recanted her allegation, claiming her father, rather than Tuttle, had committed the abuse. Id. The district court denied Tuttle's plea-withdrawal motion, formally accepted his guilty plea, and sentenced him. Id. at 255-56.
In affirming the district court's decision, we addressed Tuttle's argument that he should have been allowed to withdraw his plea because it had yet not been accepted by the district court. Id. at 257. We stated, " Minn. R. Crim. P. 15.04, subd. 3(1)... gives the district court authority to reserve acceptance of a plea pending a PSI; it does not give a defendant an absolute right to withdraw a plea pending acceptance by the court." Id. And "[w]here, as here, the sentence is an essential element of the agreement, there is no basis on which to withdraw the plea if the district court's sentence is in accordance with the plea agreement." Id. (quotation omitted).
Nicholas gives four reasons why Tuttle is distinguishable and should not determine the outcome in his case. First, he points out that Tuttle does not hold that there is no absolute right to withdraw a guilty plea pending its acceptance but rather holds only that the rules of criminal procedure do not provide that right. Nicholas is correct that the holding of Tuttle was specifically limited to the issue of whether Minn. R. Crim. P. 15.04, subd. 3(1), provided an absolute right to withdraw a plea prior to its acceptance. 504 N.W.2d at 257.
Second, Nicholas argues that his case is factually distinguishable from Tuttle because the district court in his case did not make the appropriate findings regarding his waiver of rights. He argues that because the district court did not find that his plea was intelligent, he had not successfully waived any rights and his plea was merely an inadmissible statement. Nicholas is correct that the district court did not use the word "intelligent" at the plea hearing. And it is true that in order for a guilty plea to be valid, it must be "accurate, voluntary, and intelligent." Dikken v. State , 896 N.W.2d 873, 876 (Minn. 2017) (quotation omitted). But Nicholas does not point to any caselaw holding that a district court must make a finding using those specific words in order for a guilty plea to be valid.[1] That is because *291 a guilty plea's validity depends not on whether the district court used specific words but rather on whether the defendant's plea was actually accurate, voluntary, and intelligent. And there is no debate on appeal as to whether Nicholas's guilty plea was intelligently made since he does not assert otherwise. The record would not support such an assertion anyway because the district court questioned Nicholas to make sure he understood the charges against him and the rights he was giving up by pleading guilty. Nicholas's attempt to factually distinguish his case from Tuttle fails because he did successfully waive his rights by making a valid guilty plea.
Third, Nicholas argues that in Tuttle the "entire design of the agreement was premised on binding the parties to the agreement before the PSI was prepared" because the PSI would determine the sentence Tuttle would receive, but that his own "agreement was fixed and not dependent on any intervening assessments or conduct." And fourth, Nicholas points out that in Tuttle the agreement specified that Tuttle would not be allowed to withdraw from the agreement if he were found to be unamenable to probation. Neither of these distinctions are relevant to our analysis of Nicholas's case.
From our reading of the case, we conclude, like Nicholas, that Tuttle was limited to the question of whether the Minnesota Rules of Criminal Procedure provide an absolute right to withdraw a guilty plea prior to its acceptance. It did not contemplate the broader question of whether such a right exists outside of our rules of criminal procedure. And for that reason, it is not dispositive in this case.
The Federal Courts
We turn to Nicholas's argument that we should hold there is an absolute right to withdraw so as to be in conformity with the federal courts. Nicholas points out that older versions of the Federal Rules of Criminal Procedure were silent on the question of whether a defendant had an absolute right to withdraw a guilty plea pending its acceptance by the district court. This led to a circuit split on the question. The Seventh and Ninth Circuits agreed that defendants have an absolute right to withdraw a guilty plea prior to the district court accepting it. United States v. Shaker , 279 F.3d 494, 497-98 (7th Cir. 2002) ; UnitedStates v. Alvarez-Tautimez , 160 F.3d 573, 576 (9th Cir. 1998). But the Fifth, Sixth, and Eighth Circuits disagreed, applying the fair-and-just standard instead. United States v. Grant , 117 F.3d 788, 790-92 (5th Cir. 1997) ; United States v. Mader , 251 F.3d 1099, 1104-05 (6th Cir. 2001) ; United States v. Payton , 168 F.3d 1103, 1105 (8th Cir. 1999). The Federal Rules of Criminal Procedure were eventually amended to include language that a defendant may withdraw a guilty or nolo contendere plea prior to acceptance "for any reason or for no reason," thus resolving the circuit split. Fed. R. Crim. P. 11(d) ; see also United States v. Head , 340 F.3d 628, 629-30 (8th Cir. 2003) (explaining the change). And Nicholas argues that we should follow this example.
But Tuttle shuts that door. As Nicholas himself points out, Tuttle explicitly dealt with whether Minn. R. Crim. P. 15.04, subd. 3(1), gives "a defendant an absolute right to withdraw a plea pending acceptance by the court," holding that it does not. 504 N.W.2d at 257. To follow the example of a case like Shaker and find that *292 we can infer such a right from our rules of criminal procedure would run afoul of Tuttle , and we decline to do so.
Trial Rights
This brings us to the question left unanswered by Tuttle : whether an absolute right to withdraw a plea exists outside of the Minnesota Rules of Criminal Procedure. Nicholas argues that this absolute right can be inferred from a defendant's trial rights, including the presumption of innocence. Of particular importance to his argument is the idea that those rights are not waived until a valid guilty plea is accepted. The Minnesota Supreme Court provides us with some guidance in answering this question. In Shorter v. State , it explained that "[o]nce a guilty plea has been entered , there is no absolute right to withdraw it." 511 N.W.2d 743, 746 (Minn. 1994) (emphasis added).
That makes the dispositive question: when should we consider a guilty plea to have been entered? We hold that once a defendant has "put formally before the court" a valid guilty plea, he has entered it and has no absolute right to withdraw it. Black's Law Dictionary 648 (10th ed. 2014) (defining "enter" as, "To put formally before a court or on the record."). That the district court has delayed acceptance of such a valid guilty plea until sentencing or pending the results of a PSI-a common practice amongst district courts permitted by the rules of criminal procedure-does not change this. See Minn. R. Crim. P. 15.04, subd. 3(1) (authorizing a district court to reserve acceptance of a plea pending a PSI). The fair-and-just standard applies instead. To hold otherwise would be to turn the act of pleading guilty into a "mere gesture, a temporary and meaningless formality reversible at the defendant's whim" when it is in fact a "grave and solemn act." Grant , 117 F.3d at 791 (quoting United States v. Hyde , 520 U.S. 670, 677, 117 S.Ct. 1630, 1634, 137 L.Ed.2d 935 (1997) ). And "the process of accepting guilty pleas would simply be a means of continuing the trial to some indefinite date in the future when the defendant might see fit to come in and make a motion to withdraw his plea." Kim v. State , 434 N.W.2d 263, 266 (Minn. 1989) (quotation omitted); see also Mader , 251 F.3d at 1104-05 (explaining that allowing a defendant to withdraw a guilty plea without a fair and just reason "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess" (quotation omitted) ).
But we take time to note the importance of the validity of the guilty plea. "To be valid a guilty plea must be accurate, voluntary and intelligent." Dikken 896 N.W.2d at 876 (quotation omitted). For example, were a defendant to blurt out, unprompted, at his initial appearance that he is pleading guilty, he would of course not be bound by that statement. Instead, the proper procedures must be followed to assure a guilty plea's validity,[2] including informing the defendant of the rights that he is waiving by pleading guilty, establishing a factual basis for the plea, and assuring that the defendant is not being coerced into pleading guilty or under the influence of intoxicants.
We conclude that Nicholas's guilty plea was valid and that he did not have an absolute right to withdraw it.
II. Plea Withdrawal Under the Fair-and-Just Standard
Nicholas argues that even if he did not have an absolute right to withdraw his guilty plea, he should have been allowed to do so under the fair-and-just *293 standard. We review the decision to deny a presentence withdrawal motion for an abuse of discretion, and reverse only in the rare case. State v. Raleigh , 778 N.W.2d 90, 97 (Minn. 2010).
Nicholas claims he should have been allowed to withdraw his guilty plea because the OFP was not in effect when he was accused of violating it.[3] Under Minn. Stat. § 518B.01, subd. 5(d) (2018), a respondent may request a hearing on an ex parte OFP, and that hearing must be held within ten days of the receipt of that request. And a court may grant a five-day continuance if the parties show good cause for not being able to proceed at the initial hearing. Id. , subd. 5(e) (2018). In this case, Nicholas requested a hearing on December 12, meaning that, not counting the five extra days for a continuance, he was entitled to a hearing by December 22. The hearing was initially scheduled for December 16, but the district court continued the hearing until January 5, 2017, which was outside the statutory time limit. Nicholas is alleged to have violated the OFP on December 21, within the initial ten-day time limit.
Despite the fact that he is alleged to have violated the OFP within the initial ten-day time limit, Nicholas insists that the OFP was not in effect on December 21 because it had expired the moment the district court continued the hearing and rescheduled it outside of the statutory time frame. To support this contention, he cites to language from Burkstrand v. Burkstrand saying that an ex parte order "expire[s] upon the court's failure to comply with the statutory hearing time frames." 632 N.W.2d 206, 213 (Minn. 2001). Nicholas reads this to mean that an OFP expires the moment a scheduling mistake is made. But the more natural reading of the quoted language, and indeed the reading we adopt, is that an ex parte OFP expires once the time frame runs without a hearing. This makes sense from a policy standpoint. Ex parte OFPs are intended to protect vulnerable people. To have one expire because of a scheduling mistake would be antithetical to this intent and would remove the extraordinary protection afforded by an ex parte OFP. Moreover, Nicholas's cramped reading of Burkstrand would not allow for the correction of the scheduling error within the statutory time frame.
A closer reading of Burkstrand is equally problematic for Nicholas's instant-expiration argument. Burkstrand was concerned primarily with the question of whether a district court was divested of its subject-matter jurisdiction when it held a hearing outside of the statutory time frame. Id. at 208-09. And nothing in the opinion suggests that the supreme court intended for ex parte OFPs to expire the instant a hearing is scheduled outside the statutory time frame. Accordingly, we conclude that Nicholas's instant-expiration argument fails.
Nicholas also argues that the OFP was not in effect because the district court failed to issue an order continuing the provisions of the ex parte order when it continued the hearing. Minn. Stat. § 518B.01, subd. 5(e), states that if a district court grants a continuance, it "shall also issue a written order continuing all provisions of the ex parte order pending the issuance of an order after the hearing."
*294 The limited record appears to confirm that no such order was issued. But the statute does not describe the consequences of not issuing such an order. It does not say that an ex parte OFP automatically expires upon a district court's failure to issue a continuing order. And we decline to conclude as much, especially when, as here, the violation occurred within the ten-day time frame for a hearing.
We conclude that the ex parte OFP was in effect at the time that Nicholas was accused of having violated it. Accordingly, the district court did not abuse its discretion when it denied Nicholas's plea-withdrawal motion under the fair-and-just standard.
III. Need for an Evidentiary Hearing
Nicholas's final argument is that the district court erred by not conducting an evidentiary hearing after his trial counsel stated that Nicholas felt he was threatened into pleading guilty. More specifically, Nicholas asserts that the district court erred by finding him not credible despite not conducting an evidentiary hearing or hearing his testimony. But this argument is rendered moot by the fact that Nicholas subsequently explained to the district court that he did not feel threatened by his attorney but rather felt coerced by the situation. While it may have been an error for the district court to make a credibility determination without hearing from Nicholas, it ultimately did not matter because Nicholas clarified that he was not threatened by his attorney and he does not assert on appeal that his attorney indeed threatened him.
DECISION
Once it has been entered, a defendant does not have an absolute right to withdraw a guilty plea before the district court formally accepts it. And the ex parte OFP was in effect at the time that Nicholas violated its terms. Accordingly, we conclude that the district court did not abuse its discretion by denying Nicholas's plea-withdrawal motion and that his evidentiary-hearing argument is moot.
Affirmed.

Even if the caselaw were to require the district court to make an intelligence finding, Nicholas's argument would fail because the district court did so implicitly. While the district court did not use the word "intelligent," it described Nicholas's guilty plea as "knowing," which is consistent with how caselaw defines the intelligence component of a valid guilty plea. See State v. Farnsworth , 738 N.W.2d 364, 372 (Minn. 2007) ("When a guilty plea is entered, it must be accurate, voluntary and intelligent (that is, knowing and understanding).").

And, as we discussed above, Nicholas's guilty plea was valid.

In his brief, Nicholas says that the OFP was not "valid." But we understand him to mean that it was not "in effect" since an OFP cannot be collaterally attacked in a criminal proceeding. See State v. Romine , 757 N.W.2d 884, 889-90 (Minn. App. 2008) ("As a general rule, a party's failure to appeal the issuance of a court order precludes a collateral attack on that order in a subsequent proceeding."), review denied (Minn. Feb. 17, 2009).