**Andrew Joseph DIKKEN, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**A16-1883**

Supreme Court of Minnesota.

Filed: June 21, 2017

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica May Surges, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, Saint Paul, Minnesota; and Keith Helgeson, Yellow Medicine County Attorney, Granite Falls, Minnesota, for respondent.

## OPINION

STRAS, Justice.

This case requires us to determine whether an allegedly erroneous ruling by the district court entitles appellant Andrew Joseph Dikken to withdraw his guilty plea to first-degree-murder charges. Because the district court's alleged error—the rejection of Dikken's earlier unconditional guilty plea to second-degree-murder charges—does not give rise to a manifest injustice entitling Dikken to withdraw his plea, we affirm the postconviction court's decision to deny relief without holding an evidentiary hearing.

## FACTS

Dikken shot and killed two people, including his ex-girlfriend, after breaking into her home. After Dikken surrendered to the authorities, the State of Minnesota charged him with two counts of second-degree intentional murder. Minn. Stat. § 609.19, subd. 1(1) (2016). During his second appearance in court—a hearing required by Minn. R. Crim. P. 8—Dikken did not seek to enter a plea, nor did the State provide notice of its intent to seek an indictment. Accordingly, Dikken was not arraigned at that time, and the district court scheduled the next hearing, an omnibus hearing under Minn. R. Crim. P. 11, for approximately 2 months later.

Before the omnibus hearing, Dikken filed a petition to plead guilty to both second-degree-murder counts. The district court then held a guilty-plea hearing. Right before the hearing, the State notified the court and Dikken of its intent to seek a grand-jury indictment on first-degree-murder charges. Based on the State's notice, the court denied Dikken's petition to plead guilty. *See* Minn. R. Crim. P. 8.02, subd. 2 ("If the complaint charges a homicide, and the prosecuting attorney notifies the court that the case will be presented to the grand jury ... the defendant cannot enter a plea at the Rule 8 hearing.").

Approximately 2 weeks later, a grand jury returned an indictment charging Dikken with six counts of first-degree murder. Following the indictment, the State dismissed the second-degree-murder charges. Dikken ultimately reached a plea agreement with the State under which he pleaded guilty to one count of first-degree premeditated murder and one count of

first-degree murder while committing a burglary. Minn. Stat. § 609.185(a)(1), (3) (2016). The district court accepted the plea; convicted Dikken of both counts; and sentenced him to two concurrent life sentences, one without the possibility of release.

Dikken filed a timely petition for postconviction relief requesting that he be allowed to withdraw his guilty plea and instead plead guilty to the original second-degree-murder charges. The postconviction court denied the petition without holding an evidentiary hearing, concluding that there were no material facts in dispute and that Dikken had failed to establish a manifest injustice entitling him to withdraw his plea.

## ANALYSIS

■■■ This case arises out of the summary denial of Dikken's postconviction petition seeking the withdrawal of his guilty plea. Although we review the denial of an evidentiary hearing and a petition for postconviction relief for an abuse of discretion, *Rhodes v. State*, 875 N.W.2d 779, 786 (Minn. 2016), the overall question of whether Dikken's guilty plea was valid presents a question of law that we review de novo, *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016). "We [will] not reverse the postconviction court unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Brown v. State*, 863 N.W.2d 781, 786 (Minn. 2015) (internal citation and quotation marks omitted).

■■■ Dikken argues that the postconviction court abused its discretion when it denied his request to withdraw his plea. According to Dikken, the district court committed an error of law when it failed to accept his petition to enter an unconditional guilty plea to the second-degree-murder charges at the plea hearing, which occurred weeks after the Rule 8 hearing and right after the State announced its intention to seek an indictment against Dikken on first-degree-murder charges. This error was so significant, in Dikken's view, that it impaired his ability several months later to voluntarily and intelligently enter a guilty plea to the first-degree-murder charges. We disagree with Dikken's argument because even if we were to assume that the district court committed a legal error—a question we need not resolve today—the record shows that Dikken's guilty plea was both voluntarily and intelligently made.

■■■ "A defendant does not have an absolute right to withdraw a guilty plea once it [has been] entered." *State v. Hughes*, 758 N.W.2d 577, 582 (Minn. 2008). Rather, a court "must allow a defendant to withdraw a guilty plea" after sentencing only when the defendant establishes "that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a guilty plea must be "accurate, voluntary, and intelligent." *Kaiser v. State*, 641 N.W.2d 900, 903 (Minn. 2002). Dikken challenges only two of the three requirements: voluntariness and intelligence.[1]

■■■ To be voluntary, a guilty plea may not be based on "any improper pres-

---

1. The State urges us to conclude that Dikken has forfeited the argument that his guilty plea was unintelligent. Although it is true that the postconviction petition focused primarily on the question of whether Dikken could have voluntarily entered a plea after the district court's allegedly erroneous ruling, the petition also adequately raised the related ques-

sures or inducements." *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). Improper pressures or inducements can come in a variety of forms. At one extreme, "the government may not produce a plea through actual or threatened physical harm, or by mental coercion 'overbearing the will of the defendant.'" *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994) (quoting *Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). But the State also cannot induce a guilty plea based on a promise by the prosecutor that goes unfulfilled or was unfulfillable from the start, such as a plea agreement involving the promise of an illegal sentence. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). In short, a plea is involuntary when it is induced by coercive or deceptive action.

To be intelligent, a guilty plea must "represent[ ] a knowing and intelligent choice [among] the alternative courses of action available." *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977). Whether a plea is intelligent depends on what the defendant knew at the time he entered the plea—specifically, as applied to this case, whether Dikken "understood the charges against him, the rights he waived, and the consequences of the plea." *Nelson v. State*, 880 N.W.2d 852, 858 (Minn. 2016). If Dikken understood all three aspects of his plea to the first-degree-murder charges, then his plea was intelligently entered, even if other irregularities arose during the course of the proceedings. *See, e.g., Brown*, 449 N.W.2d at 182 (holding that a plea was intelligent because the defendant adequately understood all three aspects of his plea, even though "the interrogation of defendant was not a model interrogation"); *see also State*

*v. Thomale*, 298 Minn. 569, 215 N.W.2d 809, 809 (1974) (holding that multiple allegedly erroneous procedural rulings occurring before the entry of a guilty plea could not be grounds for withdrawing the plea).

Dikken claims that he was left with "no meaningful choice," which impaired his ability to both voluntarily and intelligently enter a plea, after the district court refused to accept his plea to the second-degree-murder charges and the grand jury indicted him on first-degree-murder charges. Factually, Dikken is incorrect because he still had a host of options available, including, among other things, proceeding to trial; entering into plea negotiations with the State; attempting to plead guilty to a lesser-included offense under Minn. R. Crim. P. 15.07; and requesting a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, which would have fully preserved his argument that the court was legally required under Rule 8 to accept his unconditional guilty plea to the second-degree-murder charges. Dikken had meaningful choices, just not the specific choice he preferred.

Consequently, the district court's allegedly erroneous ruling did not render Dikken's later plea involuntary. His guilty plea to the first-degree-murder charges, whatever the persuasiveness of his argument that he had a right to unconditionally plead guilty at an earlier stage of the proceedings, was not induced by coercion or unfulfilled or unfulfillable promises. To the contrary, Dikken pleaded guilty because, in his words, he wanted to avoid the "great emotional expense to the victims' families and himself." In addition, aside from his legal argument based on Rule 8, he does not allege that the prosecutor or the court did anything improper to induce

tion of whether Dikken's plea was intelligent-

ly made at the time of its entry.

him to enter a plea to the first-degree-murder charges. These facts, considered as a whole, are inconsistent with Dikken's theory that his plea was involuntary.

The guilty plea was also intelligently made. Dikken understood (and confirmed on the record) each of the characteristics of an intelligent guilty plea, including the charges against him, the rights he was waiving, and the consequences of the plea. Nowhere does he suggest that he failed to understand that he was pleading guilty to two first-degree-murder charges, one of which carried a mandatory penalty of life imprisonment without the possibility of release, or that he was waiving a variety of procedural rights by pleading guilty. Therefore, under the standard intelligence inquiry, Dikken's guilty plea was intelligent.

Even though Dikken understood the trial rights he was relinquishing when he entered the plea, he implies that the erroneous ruling itself somehow undermined his ability to comprehend the full panoply of rights he was waiving. Specifically, he argues that, had he known that the court's earlier rejection of his unconditional guilty plea possibly conflicted with the requirements of Rule 8, he would have made a different decision. In essence, then, Dikken argues for an expanded approach to the intelligence inquiry that would require a criminal defendant to have knowledge of any potentially erroneous rulings before pleading guilty.

Dikken's argument, however, is at odds with the longstanding rule that a valid guilty plea waives "all non-jurisdictional defects arising prior to the entry of the plea."[2] *State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986); *see also Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant [pleads guilty] ... he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). If we were to accept Dikken's argument that, in addition to understanding the charges, the rights being waived, and the consequences of the plea, a defendant also must have knowledge of every possible error that could be challenged on appeal, there would be nothing left of the rule that only jurisdictional challenges may be entertained after a criminal defendant has pleaded guilty. *Cf. Korman v. State*, 262 N.W.2d 161, 161 (Minn. 1977) (stating that the defendant's valid guilty plea waived his challenges that he was deprived of his right to counsel and that his confession was inadmissible). A defendant would be able to challenge a nonjurisdictional defect after pleading guilty whenever there is any allegedly erroneous procedural or evidentiary ruling that the defendant claims would have changed his or her decision to plead guilty. Dikken's argument is, in short, inconsistent with the law limiting the circumstances under which a plea may be withdrawn.

Finally, Dikken claims that even if his guilty plea were valid, the district court's

---

**2.** Dikken relies on two cases, but neither supports his position. The first, *Vang v. State*, is inapposite because the question presented was whether the juvenile court had jurisdiction over the case. 788 N.W.2d 111, 115 (Minn. 2010). Unlike Dikken's argument here, *Vang*'s jurisdictional holding falls squarely outside the rule that a guilty plea waives non-jurisdictional defects. The second case, *Bonga v. State*, involved a criminal defendant who may have lacked mental competency at the time he entered his guilty plea, a situation far different from the one presented here and one that implicated the intelligence of the plea. 797 N.W.2d 712, 718 (Minn. 2011).

alleged error itself created a manifest injustice entitling him to withdraw his plea. This catchall argument, which is just an alternative formulation of the claim that his plea was unintelligent, suffers from the identical flaw: it would effectively swallow the rule that a guilty plea waives all errors except jurisdictional defects in the proceedings. Under either formulation of Dikken's argument, we decline to create such a sweeping exception to our well-established waiver rule.

To satisfy the manifest-injustice standard, Dikken had the burden to prove that his plea was invalid because it was inaccurate, involuntary, or unintelligent. *Weitzel v. State*, 883 N.W.2d 553, 556 (Minn. 2016). Because he failed to raise a factual dispute on any of these elements, much less prove that they were absent, the postconviction court did not abuse its discretion when it denied his petition for postconviction relief without holding an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the postconviction court.

Affirmed.