*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0271**

State of Minnesota,
Respondent,

vs.

Henry Lee Brown,
Appellant.

**Filed March 25, 2024**
**Affirmed**
**Worke, Judge**

Hennepin County District Court
File No. 27-CR-21-4627

Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Emily Toms, Certified Student Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Gaïtas, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant challenges his conviction for criminal vehicular homicide, arguing that (1) the district court abused its discretion by denying his presentencing motion to withdraw his guilty plea, (2) his guilty plea was inaccurate, and (3) the district court abused its discretion by denying him a sentencing departure. We affirm.

**FACTS**

In March 2021, respondent State of Minnesota charged appellant Henry Lee Brown with two counts of criminal vehicular homicide: operating a vehicle negligently—under the influence of alcohol and leaving the scene after causing a collision. *See* Minn. Stat. § 609.2112, subds. 1(a)(2)(i), 1(a)(7) (2020).

At a hearing in June 2022, the state indicated that it consistently offered Brown an agreement to "plead guilty to one of the two counts of the [c]omplaint" and receive a 58-month prison sentence. With Brown's two criminal-history points, the presumptive sentence was 68 months in prison (58-81-months range). Defense counsel stated that the parties also discussed that, if Brown pleaded guilty, the state would not charge Brown's girlfriend with a criminal offense related to the collision. Brown declined the offer.

Jury selection began. But just days later, Brown agreed to plead guilty to "criminal vehicular operation—leaving the scene—death." Brown agreed that he understood the plea agreement, the rights he was waiving by pleading guilty, that a jury was selected and the parties were prepared to proceed with trial, and the possible sentence he could receive.

As stated by the district court, Brown pleaded guilty to "[c]ount 2, criminal vehicular homicide, driver who causes a collision leaving the scene, a violation of [Minn. Stat. §] 609.2112.1(a)(7)." In establishing the factual basis to support the plea, Brown agreed that "on March 4th, 2021, [he] w[as] driving a motor vehicle" and his girlfriend was a passenger. As he was "nearing [his] home address, [he] suffered a medical incident and started convulsing."[1] Although he did not remember, he agreed that, based on his girlfriend's statement, "[she] reached over near the steering wheel, may have honked or tried to grab it, but . . . the vehicle swerved and . . . a pedestrian, was crossing the street at the same time."

Brown agreed that his "foot was on the gas pedal," he was "in the driver's seat and . . . [he] caused the collision with [the pedestrian]." After the collision, Brown "continued driving the vehicle . . . home," which was approximately four houses away from the collision. At home, Brown's girlfriend pointed out a cracked windshield. His girlfriend then walked to the scene. When she returned home, she told Brown that the pedestrian had died. Brown never made "any effort to contact the police or to return to the scene and report that [he] w[as] the driver." Officers arrested Brown the next day, approximately 15 hours after the collision.

---

[1] Brown claimed to have no recollection of the incident and based his statement that he was convulsing on his girlfriend's account of the incident. The record does not show that Brown suffers from a medical condition that would cause him to have convulsions. The district court noted that it is unclear whether Brown suffered a seizure because Brown left the scene and failed to report the collision, which prevented a full investigation into the collision.

The district court asked if Brown was entering a *Norgaard* plea[2] because Brown stated that he did not remember the collision. Brown's attorney replied: "I don't know that it necessarily is [a *Norgaard* plea] because he does acknowledge being aware of his duty to report the accident as soon as possible. So [I don't think it matters] whether . . . he actually was aware of a collision at the time."

Before sentencing, Brown moved to withdraw his guilty plea, claiming that he "had not pleaded guilty to criminal vehicular homicide . . . he had only pleaded guilty to leaving the scene of an accident." Brown argued that his plea was not intelligent because he was under "emotional distress that made him unable to meaningfully participate in his plea hearing," and he decided to plead guilty "after a very short discussion with [his attorney] while a jury was waiting in the hallway." Brown also argued that, although he was driving the vehicle, "he is not guilty . . . because he had a seizure[,] . . . was in shock and unable to think clearly after the accident[,] . . . did not understand that it was his obligation to contact law enforcement and thought that his [girlfriend] did contact law enforcement within a reasonable time after the accident."

Following a hearing, the district court denied Brown's motion, stating:

> I was . . . here for the plea and had an opportunity to see the mood and demeanor of everyone in the courtroom [when] that plea was taken. And, of course, all of you know that I take a lot of pleas . . . . [S]ome of you may have even been present when there are pleas that I stop and interrupt and ask the parties to either reconvene or refuse to take them that day, because I

---

[2] When a defendant enters a *Norgaard* plea, he asserts an absence of memory on an essential element of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction. *See State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867, 872 (Minn. 1961).

4

am of the impression that the accused is in no state of mind where he can make a meaningful decision about what he's going to do that day. [I] didn't have that impression when Mr. Brown was putting in his plea.

The district court also noted that "Brown has been in and out of this system for decades, [and] has made difficult decisions to enter pleas or . . . go to trial many times in the past. He understands what's at stake." The district court concluded that it could not find that Brown's guilty plea was unintelligent and involuntary based on the entirety of Brown's history, the district court's observations when the plea was taken, and the plea petition and associated colloquy.

Brown moved for a sentencing departure. The district court denied the motion, sentencing Brown to 58 months in prison. In denying a dispositional departure, the district court stated:

It's not just that you have a long criminal history . . . because . . . a lot of it is really, really old; going back to 1984 . . . . But what I'm really looking at is the number of times that you ended up in prison, not for what you did originally, but for how you were able to proceed on probation. And, by my count, there are . . . at least a dozen, and probably more times where you end up getting revoked. And that kind of a track record under those many years, I can't get around that. I can't make a finding that you're particularly amenable to probation, because time after time after time you violated it.

The district court denied a durational departure because it could not determine that the offense was less onerous than a typical criminal-vehicular-homicide offense because Brown's "act of purposefully not coming back denies us the opportunity to objectively know." The district court stated: "I don't know if you had a seizure, I don't know if it was

a seizure induced by alcohol, and I can't know because of the nature of this crime."  This appeal followed.

**DECISION**

*Plea withdrawal*

Brown argues that the district court abused its discretion by denying his presentence motion to withdraw his guilty plea.  While a defendant has no absolute right to withdraw a guilty plea after entering it, *Dikken v. State*, 896 N.W.2d 873, 876 (Minn. 2017), a district court may allow withdrawal before sentencing when it is "fair and just" to do so.  Minn. R. Crim. P. 15.05, subd. 2.  And a district court must allow a defendant to withdraw a guilty plea at any time when "necessary to correct a manifest injustice."  *Id.*, subd. 1.

The fair-and-just standard is "less demanding than the manifest injustice standard," but a district court will not permit plea withdrawal for just any reason.  *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007).  In deciding whether plea withdrawal is fair and just, a district court considers: "(1) the reasons a defendant advances to support withdrawal and (2) prejudice granting the motion would cause the [s]tate given reliance on the plea."  *State v. Raleigh*, 778 N.W.2d 90, 97 (Minn. 2010).  The defendant must provide a fair-and-just reason for plea withdrawal and the state must show that withdrawal would cause prejudice. *Id.*  We review a district court's denial of a plea-withdrawal motion under the fair-and-just standard for an abuse of discretion, reversing only in the "rare case."  *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989); *Raleigh*, 778 N.W.2d at 97.

To correct a manifest injustice, a district court must allow a defendant to withdraw a plea that is invalid—a plea that is not voluntary, intelligent, and accurate.  *Taylor v. State*,

6

887 N.W.2d 821, 823 (Minn. 2016); *Raleigh*, 778 N.W.2d at 93. "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. We review de novo whether the defendant has met the manifest-injustice standard. *Id.*

### *Voluntary and intelligent*

Brown argues that his guilty plea was not voluntary or intelligent. The voluntary requirement ensures that the defendant is not pleading guilty due to improper pressure or coercion. *Id.* at 96. A guilty plea may not result from "mental coercion overbearing the will of the defendant." *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994) (quotation omitted). The intelligent requirement ensures that the defendant understands the charges, his rights, and the consequences of pleading guilty. *Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009), *rev. denied* (Minn. Aug. 11, 2009).

Brown claims that his guilty plea was not voluntary or intelligent because he thought he was facing a leaving-the-scene-of-an-accident conviction and not a criminal-vehicular-homicide conviction. He claims that the parties used varying terms to refer to the offense, which made it difficult for him to understand, especially when he was under emotional distress.

In addressing Brown's claim that his plea was not voluntary because of emotional distress, the district court stated that it intervenes when under the impression that a defendant "is in no state of mind where he can make a meaningful decision." The district court "didn't have that impression when Mr. Brown was putting in his plea." The district court agreed that it was a stressful situation but did not find that Brown was under so much emotional distress that he did not understand what he was doing.

7

Brown also claims that his plea was not voluntary because he did not have much time to talk to his attorney and felt pressure because the jury was waiting. But Brown was charged in March 2021. Brown's jury trial was to begin over a year later in June 2022. Brown was aware of the charges for more than one year. And he was aware of the plea offer for much of that time because the state noted that it had consistently presented the offer to Brown.

Brown agreed to plead guilty after his girlfriend agreed to testify and the state indicated that it would not charge her with any offense related to the collision. At the time, Brown agreed that he had enough time to discuss the case and the agreement with his attorney and he submitted a plea petition indicating as much. The district court was careful to ensure that Brown understood the plea petition:

> Mr. Brown, you're telling me . . . by having [your attorney] deliver that petition to my clerk, you're essentially telling me, 'I know everything that's in this petition, we've gone over it,' by 'we' I mean you and your lawyers have gone through it line-by-line, if you had any questions, you've had enough time to talk about it, and you understand what's in there, and importantly, the valuable trial rights you're waiving; is that right?

Brown replied: "Yes, sir." The record supports the district court's determination that Brown was not so emotionally distressed or pressured to enable him to enter his plea voluntarily.

Brown claims that his guilty plea was not intelligent because he believed that he was facing charges for "leaving the scene of an accident" and not for "criminal vehicular

8

homicide." But Brown was never charged with leaving the scene of an accident and the plea hearing and petition show that Brown pleaded guilty to criminal vehicular homicide.

In the complaint, Brown was charged with two counts of criminal vehicular homicide: operating a vehicle negligently—under the influence of alcohol and leaving the scene after causing a collision. *See* Minn. Stat. § 609.2112, subds. 1(a)(2)(i), 1(a)(7). The complaint was never amended, and Brown indicated that he understood the charges in the complaint.

At the beginning of trial, the prosecutor stated that it consistently offered Brown an agreement to "plead guilty to *one of the two counts of the [c]omplaint* . . . for 58 months [in prison]." (Emphasis added.) And at the plea hearing, the prosecutor stated: "The [s]tate is agreeing to cap its request at prison time to 58 months . . . if Mr. Brown pleads guilty to *one of the two counts in the complaint*." (Emphasis added.) Again, the two charges in the complaint are criminal vehicular *homicide*; the complaint was never amended.

The plea petition includes the language "criminal vehicular operation—leaving the scene—death," and the statute violated—Minn. Stat. § 609.2112, subd. 1(a)(7). The petition refers to the charge twice, using nearly identical wording and the word "death." At the plea hearing, Brown pleaded guilty to the "charge in [c]ount 2, criminal vehicular homicide, driver who causes a collision leaving the scene, a violation of [Minn. Stat. §] 609.2112.1(a)(7)." The charge in the complaint was identified, the word "homicide" was used, and the criminal-vehicular-homicide statute was referenced. The statute for leaving the scene of an accident, Minn. Stat. § 169.09, subd. 1 (2020), is never referenced in the plea petition or at the plea hearing.

9

A guilty plea is intelligent when the defendant understands the charges, his rights, and the consequences of the plea. *See Carey*, 765 N.W.2d at 400. Brown agreed that he understood the charges in the complaint, and the record shows that references to the charges included causing "homicide" or "death." Brown does not claim to have misunderstood his rights. Finally, the record shows that the parties discussed the 58-month prison sentence, the bottom-of-the-box sentence that Brown would receive if he pleaded guilty to one of the two counts in the complaint and the district court denied his motion for a departure. Brown does not claim that he misunderstood this sentence.

The record supports the district court's decision to deny Brown's presentence plea-withdrawal motion. First, under the fair-and-just standard, Brown failed to provide a fair-and-just reason for plea withdrawal. Second, Brown failed to show that a manifest injustice would result if he were not allowed to withdraw his plea because he failed to show that his plea was involuntary or unintelligent.

### *Accuracy of guilty plea*

Brown did not challenge the accuracy of his guilty plea in district court. Brown argues that we should permit him to withdraw his guilty plea because the factual basis does not show that he was operating a motor vehicle at the time of the collision because he was having a seizure.

The accuracy requirement of a valid guilty plea focuses on the factual basis supporting the plea and ensures that the defendant does not plead guilty to a greater offense than what he could be convicted of after a trial. *Theis*, 742 N.W.2d at 649. A guilty plea is accurate when there are "sufficient facts on the record to support a conclusion that [the]

10

defendant's conduct falls within the charge to which he desires to plead guilty." *Kelsey v. State*, 214 N.W.2d 236, 237 (Minn. 1974).

Brown pleaded guilty to criminal vehicular homicide. To be an accurate plea, Brown must have admitted that he (1) was operating a motor vehicle, (2) caused a collision, (3) caused the death of a human being, and (4) left the scene of the collision. *See* Minn. Stat. § 609.2112, subd. 1(a)(7). Brown claims that the factual basis does not establish the first element of the offense—that he was volitionally "operating" the vehicle.

The statute does not require that Brown's operation of the vehicle include a volitional act. Brown stated that he "started convulsing" while he was "driving a motor vehicle." He also admitted that his "foot was on the gas pedal," he was "in the driver's seat and . . . [he] caused the collision with [the pedestrian]." After the collision, Brown admitted that he "continued driving the vehicle . . . home" and that he never contacted law enforcement. Brown was driving, he knew that he caused a collision with a pedestrian, he knew that the pedestrian died, and he knew that he left the scene and failed to contact law enforcement. Brown's plea was accurate.

Brown claims that because he was unaware of what occurred during the collision, he could not have been operating the vehicle. But the district court asked if Brown was entering a *Norgaard* plea and Brown's attorney stated that it was not necessary that Brown be aware of the collision when it occurred because Brown acknowledged "being aware of his duty to report the accident as soon as possible." Similarly, as the state argues, the act constituting the crime is leaving the scene of the collision and failing to notify law

enforcement to enable law enforcement to investigate what occurred. This record shows that Brown's guilty plea was accurate and therefore valid.

### *Sentencing*

Finally, Brown argues that the district court abused its discretion by denying his sentencing-departure requests. Because a guidelines sentence is "presumed to be appropriate," a district court "must" impose a sentence that is within the presumptive range unless there are "substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 1.B.13, 2.D.1 (Supp. 2021). "Substantial and compelling circumstances are those demonstrating that the defendant's conduct in the offense . . . was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Hicks*, 864 N.W.2d 153, 157 (Minn. 2015) (quotations omitted). This court reviews a district court's denial of a departure for an abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006). Only in a "rare case" will a district court's imposition of a presumptive sentence be reversed. *Id.* (quotation omitted).

#### *Dispositional departure*

Brown argues that the district court should have granted a dispositional departure. "A dispositional departure typically focuses on characteristics of the defendant that show whether the defendant is particularly suitable for individualized treatment in a probationary setting." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) (quotation omitted). In assessing particular amenability to probation, a district court considers "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982); *see also*

12

*State v. Soto*, 855 N.W.2d 303, 308-09 (Minn. 2014) (stating that defendant must be particularly amenable to probation, not merely amenable).

Brown claims that he was supervised during the pendency of the case and showed his amenability. He also claims that these factors show that he is amenable to probation: he is 56 years old, has an old criminal history, was cooperative and respectful, has family support, and is remorseful.[3] The district court acknowledged that Brown's criminal history is old, but stated that Brown is not a "good risk on probation" because Brown failed to show his success on probation by being revoked "at least a dozen" times.

In determining whether a dispositional departure is appropriate, the district court must find the defendant "particularly" amenable to probation. Here, the district court, relying on Brown's history, stated: "I can't make a finding that you're particularly amenable to probation, because time after time after time you violated it." The district court did not abuse its discretion by denying Brown's request for a dispositional departure.

### Durational departure

Brown also argues that the district court should have granted a durational departure because the offense is less serious than the typical offense because he had a seizure. "A durational departure must be based on factors that reflect the seriousness of the offense, not the characteristics of the offender." *Solberg*, 882 N.W.2d at 623 (emphasis omitted). Downward durational departures are justified when a defendant's conduct was

---

[3] In a pro se supplemental brief, Brown reiterates the reasons he is amenable to probation.

13

"significantly less serious than that typically involved in the commission of the offense." *Id.* at 624 (quotation omitted).

Here, the district court stated that Brown's "act of purposefully not coming back" and reporting the accident prevents everyone from knowing whether the offense is less serious than a typical criminal-vehicular-homicide offense. The district court stated: "I don't know if you had a seizure, I don't know if it was a seizure induced by alcohol, and I can't know because of the nature of this crime. You didn't come back and avail yourself of the system." The record supports the district court's determination. The district court did not abuse its discretion by denying Brown a sentencing departure.

**Affirmed.**