*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0133**

State of Minnesota,
Respondent,

vs.

Christopher Lawrence Hunt,
Appellant.

**Filed November 3, 2025
Affirmed
Larkin, Judge**

Sherburne County District Court
File No. 71-CR-21-1588

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Dawn R. Nyhus, Sherburne County Attorney, George R. Kennedy, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his convictions of two counts of second-degree criminal sexual conduct, arguing that the district court violated his rights to self-representation and counsel. Appellant raises additional issues in a supplemental pro se brief. We affirm.

## FACTS

In November 2021, respondent State of Minnesota charged appellant Christopher Lawrence Hunt with four counts of second-degree criminal sexual conduct. The victims were Hunt's daughter and stepdaughter, who were 16 years old or younger at the time of the offenses. Hunt requested appointment of a public defender, and the district court granted his request. The initial public defender who was assigned to represent Hunt was replaced after a staffing change at the public defender's office. For reasons not clear from the record, Hunt's public-defender assignment changed a second time, and the third public defender represented Hunt throughout the remaining proceedings in district court. All subsequent references to Hunt's public defender in this opinion refer to his third—and final—public defender.

When Hunt first appeared with his public defender in December 2022, she informed the district court, "At this point in time [Hunt] has advised me he's going to seek outside counsel so I would ask that the Public Defender's Office be discharged." The district court asked Hunt if he had hired a new lawyer. Hunt responded that he had not and that his plan was to find one that he could "speak with and consult equally and fairly." The district court granted Hunt a continuance to hire private counsel.

Hunt had not obtained private counsel by the time of a pretrial hearing in September 2023. At that hearing, Hunt's public defender informed the district court that she had received an e-mail from Hunt advising her that she was fired. She asked the court to inquire of Hunt regarding his desired representation. The district court asked Hunt, "Going forward here is it your request to continue with the Public Defender's Office, . . . are you

2

going to be hiring a private lawyer, or are you going to try to represent yourself on this complicated case?"  Hunt responded:

> Umm, right now I'm kind of conflicted or confused because from my understanding my Public Defender is supposed to be in contact with me and help me as far as defending myself in my side of the case.  I've barely had any correspondence with her the whole time that she's been my Public Defender, and when I had asked her for proof of discovery she told me that's not something she was willing to be able to do.

The district court informed Hunt that his attorney was in trial the prior week which "puts her behind with communication with her other [clients]," explained to Hunt that "what normally happens is the closer you get to the trial date the more attentive, more involved the Public Defender's Office becomes regarding trial preparation," and asked again whether Hunt wanted the public defender to represent him.  Hunt responded:

> Okay because I have yet to -- I haven't heard anything about any kind of agreements or talks through the prosecutor or any kind of time or anything of what you're speaking of --
>
> . . . .
>
> -- through my Public Defender so I'm not aware or sure of anything.  I have no information at all as far as that goes.

The district court did not discharge the public defender.

At a pretrial hearing on March 25, 2024, when the district court called the case, Hunt stepped forward but did not sit by his counsel.  The court asked, "are you Mr. Hunt?"  Hunt responded, "I am here on his behalf, yes," and identified himself as "Christopher from the Hunt family."  As stated in his brief to this court, "[a]fter twice being threatened with the

3

issuance of a warrant if he did not sit by his attorney at counsel table," he relented.[1]  Then, Hunt's public defender informed the court:

> At this point in time I just would like to advise the Court that Mr. Hunt has advised me that I am no longer working for him; I got this information over e-mail.  I did attempt to call him. He is now here present today.  He confirmed that he does not want to work with the Public Defender's Office any longer.  I had previously sent him a Petition to go Pro Se.  My understanding is he is uncomfortable signing that document.

The public defender again asked the court to inquire of Hunt regarding his desired representation.  The following exchange occurred:

> THE DEFENDANT:  Umm, I would like to rebut being a ward of the state.
>
> THE COURT:  No one is saying you're a ward of the state.  I want to know . . . whether or not you're going to be representing yourself moving forward or whether or not you'll

---

[1] During this exchange, the district court warned Hunt that "if Cristopher Hunt is not here then I'll issue a warrant for his arrest.  So I'll leave it up to [you] whether you want to have a seat" next to the public defender "or not."  And after rejecting Hunt's request to hand something to the bailiff, the court warned Hunt that "[y]ou need to make a decision whether you're going to sit next to [the public defender] or whether I'm going to issue a warrant for Christopher Hunt who's not here."  Hunt argues that the district court's statements "communicated to [him] that his explicit efforts to represent himself would land him in jail" and that if Hunt "did not sit by his [public defender's] side and accept her representation, he would be placed in jail."  We reject Hunt's argument that the district court was threatening to arrest him if he attempted to represent himself in this matter. Instead, the district court was merely enforcing the General Rules of Practice for the District Courts, which provide:  "The lawyers should address the court from a position at the counsel table.  If a lawyer finds it necessary to discuss some question . . . at the bench, the lawyer may so indicate to the court and, *if invited*, approach the bench for the purpose indicated."  Minn. Gen. R. Prac. 2.03(c) (emphasis added).  The rules further provide that "[w]henever these rules require that an act be done by a lawyer, the same duty is required of a self-represented litigant."  Minn. Gen. R. Prac. 1.04.  In sum, although Hunt had a right to represent himself, he did not have a right to exercise that right in disregard of the rules that govern all proceedings in district court.

4

hire a private lawyer or whether or not you're going to continue with [the public defender].

THE DEFENDANT:  I would like to speak with you in private if I could.

THE COURT:  That doesn't happen in District Court, there are no private conversations; whatever you have to say you can say it now in open court.

THE DEFENDANT:  Okay.

THE COURT:  So what's the deal?  Do you want [the public defender] to continue to represent you?

THE DEFENDANT:  Well I was just under the impression that according to the law that if you're represented by a Public Defender you have no rights, and you become a ward of the state.

The court informed Hunt that it was not aware of any law that would support Hunt's claim.  The district court also informed Hunt that a jury trial was scheduled and asked again, "Do you want [the public defender] to continue to represent you or are you going to be representing yourself or hiring a private lawyer; what do you want to do?"  The following exchange occurred:

THE DEFENDANT:  And we're on the record?

THE COURT:  Yes we are, everything is on the record.  My Court Reporter is taking down everything.

THE DEFENDANT:  I just wanted to make sure that they had a recording of you saying that I wasn't a ward of the state.

THE COURT:  Okay.  No you're not a ward of the state unless there's some other proceedings civil that makes you a ward of the state.

THE DEFENDANT:  Okay nope.

5

THE COURT:  Okay.

THE DEFENDANT:  I would just -- I guess I haven't got to talk to [my public defender] barely at all.  I mean, the most I've talked to her has been at court.  There is no contact or communication.

THE COURT:  And again why is that?  Because the last time we were here it was some time ago.

THE DEFENDANT:  I know.

THE COURT:  And I know that you've been trying to file pleading after pleading without her knowledge, involvement, permission.  Why haven't you communicated with her?

THE DEFENDANT:  I have communicated my concerns, and every time that I've brought my concerns up to her she said that it doesn't exist and that it's not something that she will file.

The court explained to Hunt that his public defender was an officer of the court and required to abide by the rules of evidence and professional responsibility and that "if you want her to do something illegal or outrageous obviously she's not going to be doing that."

After that exchange, the district court recessed the hearing so Hunt could confer with his public defender.  After the recess, Hunt's public defender informed the court, "I have spoken with Mr. Hunt this morning.  It is my belief at this point in time that he would like to retain the services of the Public Defender's Office."  Hunt did not say or do anything to contradict that assertion.

In August 2024, jury selection began in Hunt's case.  On the second day of voir dire, Hunt pleaded guilty with the assistance of his public defender.  He proffered a petition to plead guilty in which he affirmed, "I am satisfied that my attorney has represented my

6

interests and has fully advised me." The district court sentenced Hunt to serve concurrent sentences totaling 108 months in prison.

Hunt appeals.

## DECISION

### I.

Hunt contends that the district court violated his constitutional right to self-representation.[2] We review the denial of a defendant's request to represent himself for clear error. *State v. Blom*, 682 N.W.2d 578, 613 (Minn. 2004). "If the defendant's right to self-representation is violated, he is entitled to a reversal and new trial." *Id.*

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to defend himself in a state criminal proceeding. *Faretta v. California*, 422 U.S. 806, 818-19 (1975); *State v. Richards*, 456 N.W.2d 260, 263 (Minn. 1990). "When a criminal defendant asks to represent himself, the court must determine (1) whether the request is clear, unequivocal, and timely, and (2) whether the defendant

---

[2] We note that, generally, a valid guilty plea waives any non-jurisdictional errors. *Dikken v. State*, 896 N.W.2d 873, 878 (Minn. 2017); *see Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant [pleads guilty] . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Korman v. State*, 262 N.W.2d 161, 161 (Minn. 1977) (holding that petitioner's claims "relating to the deprivation of the right to counsel at the initial appearance in municipal court and the admissibility of his confession, are both issues waived by petitioner's voluntarily, knowingly, and understandingly entered guilty plea."). The parties did not raise or address this issue in their briefing, and there was no request for oral argument. We assume without deciding that Hunt's constitutional claims are properly before us even though he pleaded guilty.

7

knowingly and intelligently waives his right to counsel." *Blom*, 682 N.W.2d at 613 (quotation omitted).

Hunt argues that the district court violated his right to self-representation because he "made unequivocal, timely, and repeated efforts to act as his own counsel, but the [district] court never permitted him to do so." Specifically, Hunt asserts that his request was unequivocal based on his "words and actions," arguing that his actions at the March 25, 2024 hearing "reflect an unequivocal request to represent himself" for three reasons: (1) when the hearing began, he "stood apart from his attorney in the courtroom," (2) when asked by the court if he was Hunt, he said he was "here on his behalf," and (3) he "asked if he could 'hand something' to the bailiff."

At the March 2024 hearing, shortly after Hunt stated that he was present "on his behalf," the district court asked Hunt, "I want to know . . . whether or not you're going to be representing yourself moving forward or whether or not you'll hire a private lawyer or whether or not you're going to continue with [the public defender]." Hunt did not answer that question, much less say that he wanted to represent himself. Instead, Hunt asked to speak to the judge in private and explained that he was "under the impression that according to the law that if you're represented by a Public Defender you have no rights, and you become a ward of the state." Hunt then raised concerns about his limited communication with his public defender. However, after the district court recessed the hearing and allowed Hunt an opportunity to confer with his public defender, Hunt's public defender informed the court, "I have spoken with Mr. Hunt this morning. It is my belief at this point in time

8

that he would like to retain the services of the Public Defender's Office." Hunt did not refute his public defender's statement.

The district court had twice previously addressed the issue of Hunt's representation. At a December 5, 2022 hearing, after learning that Hunt had told his public defender that he wanted to seek outside counsel, the district court asked Hunt, "What is the plan in that regard?" Hunt responded that he was going to find an attorney that he could "speak with and consult equally and fairly," and that he was "going to see what [he could] do" about affording a private a lawyer. But Hunt did not say that he wanted to represent himself. And at a September 18, 2023 hearing, after Hunt's public defender advised the court that Hunt sent her an email stating that she was fired, the district court specifically asked Hunt, "Going forward here is it your request to continue with the Public Defender's Office, . . . are you going to be hiring a private lawyer, or are you going to try to represent yourself on this complicated case?" Hunt responded that he was "conflicted or confused" because he had concerns about the representation he was receiving from the public defender. But again, Hunt did not say that he wanted to represent himself.

In sum, the district court specifically asked Hunt about his desired form of legal representation at three different hearings. In response, Hunt provided equivocal answers and expressed general dissatisfaction with his public defender's representation. And when the district court specifically asked Hunt if he wanted to be represented by his public defender, hire a private attorney, or represent himself, Hunt never said that he wanted to represent himself. In a case with similar facts, the supreme court determined that a defendant's request for self-representation was equivocal. *See Blom*, 682 N.W.2d at 613

9

(noting that defendant's "request was equivocal as shown by his responses when the district court asked him three times whether he was requesting to represent himself" and "[h]e did not answer the questions clearly"). And, the facts here do not compare with caselaw examples of unequivocal requests for self-representation. *See Richards*, 456 N.W.2d at 263-64 (concluding that defendant unequivocally asserted his right to self-representation when he filed two written motions demanding his right to self-representation).[3]

Finally, Hunt argues that his repeated filings directly with the district court, attempts to discharge his attorney, and "refusal to sign the Petition to Proceed as Pro Se Counsel was behavior that showed Hunt wanted to represent himself." Submission of an executed petition to proceed as pro se counsel would have clearly communicated a desire for self-representation, but the record shows that Hunt's public defender provided him with such a petition and Hunt would not sign it. Hunt's principal appellate brief asserts that his failure to sign the petition was "presumably due to his sovereign-citizen beliefs, but not because he did not want to represent himself." Although Hunt's public defender informed the district court that her "understanding" was that Hunt was "uncomfortable signing that

---

[3] As support for his arguments on appeal, Hunt cites nonprecedential decisions of this court, as well as a federal opinion, *United States v. Oreye*, 263 F.3d 669 (7th Cir. 2001), and state court decisions from California. None of those decisions are binding on this court. And because we do not find them persuasive, we do not discuss them. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) ("Nonprecedential opinions and order opinions are not binding authority . . . but . . . may be cited as persuasive authority."); *see also Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) (explaining that this court is bound by decisions of the United States Supreme Court but not the decision of any other federal court); *State v. McClenton*, 781 N.W.2d 181, 191 (Minn. App. 2010) (observing that this court is not bound to follow precedent from other state courts), *rev. denied* (Minn. June 29, 2010).

document," Hunt never explained his refusal to sign the document. On this record, the reason why Hunt refused to sign the petition is unknown, and we cannot make that factual determination. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990) (holding that the role of the court of appeals is to correct errors, not to find facts).

In sum, the issue before us is whether Hunt made a clear, unequivocal request to represent himself. *See Richards*, 456 N.W.2d at 263. An "unequivocal" request is one that is "[u]nambiguous; clear; free from uncertainty." *Black's Law Dictionary* 1845 (12th ed. 2024) (defining unequivocal). Hunt never clearly and unambiguously communicated a desire to represent himself. Although his words and conduct may have suggested some interest in self-representation, when the district court repeatedly and specifically asked Hunt if he wanted to represent himself, he never once said, "Yes." And when his public defender provided him with a petition to proceed pro se, he declined to sign it. Because Hunt did not make an unequivocal request to represent himself, the district court did not deny his right to self-representation.

## II.

Hunt contends that the district court violated his Sixth Amendment right to counsel by failing to conduct a searching inquiry after Hunt expressed concerns about the quality of his public defender's representation. The relevant law is set forth in *State v. Munt*:

> The United States and Minnesota Constitutions guarantee a criminal defendant the right to the assistance of counsel for his defense. If the defendant cannot employ counsel, the defendant is entitled to appointed counsel. But the right of an indigent defendant to court-appointed defense counsel is not an unbridled right to be represented by counsel of the defendant's choosing.

11

> When a defendant raises complaints about the effectiveness of appointed counsel's representation and requests substitute counsel, the district court must grant such a request only if exceptional circumstances exist and the demand is timely and reasonably made. Exceptional circumstances are those that affect appointed counsel's ability or competence to represent the client. But a defendant's general dissatisfaction with appointed counsel does not amount to an exceptional circumstance. *When the defendant voices serious allegations of inadequate representation, the district court should conduct a searching inquiry before determining whether the defendant's complaints warrant the appointment of substitute counsel.*

831 N.W.2d 569, 586 (Minn. 2013) (emphasis added) (quotations and citations omitted).

We review the district court's decision whether to appoint substitute defense counsel for an abuse of discretion. *Id.* "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted).

Hunt complains that, despite his expressed concerns regarding his public defender's representation, "the court never held any hearing and never inquired at all to determine if there were exceptional circumstances that necessitated the removal of [his] appointed counsel."

Hunt argues that he notified the district court that: (1) his public defender did not treat him "fairly and equally," (2) his public defender did not adequately communicate with him, and (3) his public defender failed to provide him with discovery. The record also reveals that Hunt additionally complained to the district court that his public defender refused to file certain motions on his behalf.

12

In *Munt*, the defendant complained to the district court that his attorney did not represent his interest, did not pursue his objectives, and was ineffective. 831 N.W.2d at 586-87. The supreme court determined that the district court did not err by failing to investigate those allegations because, although the defendant "may have been dissatisfied with his defense counsel," none of "his statements constituted serious allegations of inadequate representation that would have triggered the district court's duty to further inquire and determine whether it needed to appoint substitute counsel." *Id.* at 587.

The supreme court explained that a searching inquiry should be conducted when a defendant "voices serious allegations of inadequate representation" and that "a defendant's general dissatisfaction with appointed counsel does not amount to an exceptional circumstance." *Id.* at 586 (quotations omitted). Finally, the supreme court noted that "the district court permitted [the defendant] to confer privately with counsel, and after the recess, defense counsel represented to the court that he and [the defendant] were 'on track' and 'everything is fine to go.'" *Id.* at 587. The supreme court thus concluded that the defendant's "acquiescence in defense counsel's continued representation confirms that the district court did not err by failing to make an additional inquiry into [the defendant's] complaints." *Id.*

During these proceedings, Hunt implied that his public defender treated him unfairly, and Hunt complained that his public defender failed to adequately communicate with him, failed to provide him with discovery, and refused to file motions that he had requested. These are similar to the *Munt* defendant's complaints that his attorney did not represent his interest, did not pursue his objectives, and was ineffective. Those types of

13

complaints reveal only a general dissatisfaction with counsel's representation, which is insufficient to trigger a searching inquiry. *See Id.* at 586.

Although the supreme court has stated that, in certain circumstances, disagreements over trial strategy could affect an appointed attorney's ability or competence to represent a defendant, *State v. Gillam*, 629 N.W.2d 440, 449-50 (Minn. 2001), Hunt does not argue that counsel's refusal to file the motions that he requested suggested inability or incompetence on the part of his public defender. And as to Hunt's discovery complaint, the record shows that, after Hunt alleged that his counsel "wasn't able to send [discovery]," Hunt's counsel informed the court:

> Your Honor, he has had and received several copies of the discovery. The last time I advised him it would be at the office for him to pick up. It involves children and confidential information regarding those children; I did not feel comfortable mailing it, and he has refused to pick up the discovery. To the best of my knowledge, it is still sitting at the front desk, and he is refusing to pick it up, and I just am very uncomfortable just putting it in the U.S. Mail with the confidentiality involving children.

In sum, because Hunt expressed only general dissatisfaction with his public defender and did not make serious allegations of inadequate representation stemming from his public defender's ability or competence, the district court did not err by failing to conduct a searching inquiry based on Hunt's complaints. Like the supreme court in *Munt*, we are influenced by the fact that the district court permitted a recess so Hunt could meet privately with his public defender to discuss his concerns, and we conclude that Hunt's subsequent "acquiescence in defense counsel's continued representation" confirms that the

district court did not err by failing to further inquire into Hunt's complaints. *Munt*, 831 N.W.2d at 587.

Because the record does not reveal exceptional circumstances that affected the public defender's ability or competence, the district court did not violate Hunt's right to counsel by failing to perform a searching inquiry based on Hunt's complaints.

**III.**

We now turn to the issues in Hunt's pro se supplemental brief. When considering pro se arguments, several principles govern our review. Courts have a duty to reasonably accommodate pro se litigants, so long as there is no prejudice to the adverse party. *Kasson State Bank v. Haugen*, 410 N.W.2d 392, 395 (Minn. App. 1987). "Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001).

An appellate court "generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). Failure to raise an issue "before the district court at trial precludes its litigation on appeal." *Id.* In addition, "[c]laims in a pro se supplemental brief that are unsupported by either arguments or citation to legal authority are forfeited" unless "prejudicial error is obvious on mere inspection." *State v. Montano*, 956 N.W.2d 643, 650-51 (Minn. 2021) (quotations omitted).

Finally, a party must cite the record in support of factual assertions. *See* Minn. R. Civ. App. P. 128.02, subd. 1(c) (stating that "[e]ach statement of a material fact shall be

15

accompanied by a reference to the record"). The record on appeal consists of "[t]he documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ. App. P. 110.01. This court will not consider any factual assertions that are beyond the record. *See Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) (stating that "[i]t is well settled that an appellate court may not base its decision on matters outside the record on appeal").

Hunt appears to assert that his guilty plea was involuntary because his "signature was affixed with 'V.C.,'" which he claims is a "legal term [that] signifies that a contract or agreement was made under duress, threat, or coercion, rendering it invalid." Hunt also asserts that the district court violated his "Sixth Amendment right to effective assistance of counsel and the right to present a complete defense." But Hunt's assertions rely on extra record documents that we cannot consider. *Id.* And, Hunt does not set forth the applicable legal standards or provide any legal analysis to support his assertions. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth legal standard used to determine if a defendant received ineffective assistance of counsel); *Dikken*, 896 N.W.2d at 876-77 (setting forth legal standard used to determine whether a guilty plea was involuntary). Because prejudicial error is not obvious on mere inspection, these issues are forfeited. *See Montano*, 956 N.W.2d at 650-51.

In sum, Hunt's pro se supplemental brief does not provide a basis for relief.

**Affirmed.**

16