*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0793**

State of Minnesota,
Respondent,

vs.

Marvel Galvaston Williams,
Appellant.

**Filed May 28, 2024**
**Affirmed**
**Gaïtas, Judge**

Hennepin County District Court
File No. 27-CR-21-19588

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Tacota LeMuel (certified student attorney), Minneapolis, Minnesota (for respondent)

Christina Zauhar, Halberg Criminal Defense, Bloomington, Minnesota (for appellant)

Considered and decided by Gaïtas, Presiding Judge; Worke, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

In this direct appeal from convictions for aiding and abetting attempted second-degree murder, aiding and abetting third-degree depraved-mind murder, and unlawful firearm possession, appellant Marvel Galvaston Williams argues that the district court

abused its discretion by denying his motion to withdraw his guilty pleas, and alternatively, by denying his motion for a downward durational sentencing departure for the third-degree murder offense. Because the district court did not err in denying Williams's plea-withdrawal motion or abuse its discretion in imposing the presumptive sentence, we affirm.

## FACTS

On an October night in 2021, the occupants of two vehicles had a gun fight while driving through downtown Minneapolis at speeds of over 90 miles per hour. One vehicle, a Range Rover, chased the other vehicle, while the Range Rover's occupants fired guns at L.E., the driver of the other vehicle. During the course of this chase, L.E.'s vehicle struck pedestrian A.M., killing her.

Williams was a passenger in the front seat of the Range Rover. Following the incident, respondent State of Minnesota charged Williams by complaint with three counts: aiding and abetting attempted second-degree murder of L.E., aiding and abetting third-degree depraved-mind murder of A.M., and unlawful possession of a firearm due to a prior felony conviction.[1] Williams pleaded not guilty to the charges, and a trial began in May 2022.

After jury selection, Williams decided to plead guilty. He confirmed his understanding that he was entering a "straight plea" to the three charges in the complaint and that there was no agreement regarding sentencing. Williams told the district court that he understood he was giving up his right to have a trial and his trial rights. He said that he

---

[1] The state also charged Williams with aiding and abetting second-degree intentional murder for A.M.'s death. The district court dismissed this count for lack of probable cause.

was thinking clearly. And he affirmed that he was pleading guilty because he was guilty and not because his plea was based on any promises.

Following Williams's waiver of his trial rights, he admitted to the facts that made him guilty of the three offenses. Williams acknowledged that he had been a front-seat passenger in the Range Rover during the gun fight between the two vehicles. He agreed that he "intentionally advised and encouraged" the driver of the Range Rover to speed and "other people to fire their guns at [L.E.]." Williams admitted that he intended to kill L.E. during the incident. He acknowledged that the Range Rover sped through city streets at more than 90 miles per hour, endangering people on sidewalks and in other cars, and that his encouragement aided and abetted the driver's reckless driving conduct. Williams also admitted that he advised and encouraged the driver to engage in conduct that "evinced a depraved mind," with "no regard for human life," which ultimately caused A.M.'s death. Finally, Williams admitted that he was ineligible to possess a firearm due to a prior felony conviction.

At the end of the guilty plea colloquy, the district court deferred accepting the guilty plea until sentencing. The district court later ordered a presentence investigation and scheduled a sentencing hearing.

Almost nine months later, and before sentencing occurred, Williams's trial attorney filed a motion to withdraw Williams's guilty pleas. The motion asserted that Williams was entitled to withdraw the pleas because he "detrimentally relied" on an unwritten "proffer agreement with the prosecuting authority," which included a promise to "vastly reduce the duration of [Williams's] sentence if [his] information could be corroborated." Williams

3

did not submit an affidavit or other evidence with the motion and did not request a hearing. His motion specifically requested that the district court "rule on the motion without holding a hearing on the matter." The state filed a response opposing Williams's motion, acknowledging that it had offered to consider making a favorable sentencing recommendation if Williams provided information about the incident that could be corroborated. The state's response further stated that it "was unable to corroborate or verify any of the information provided by [Williams]," and, "[i]n fact, some of the information provided by [Williams] appeared to contradict much of the physical evidence related to the death of A.M."

The district court denied Williams's motion to withdraw the guilty pleas on two grounds. First, although Williams's motion did not raise the manifest-injustice standard for plea withdrawal, the district court determined that there was no manifest injustice because Williams's pleas were accurate, voluntary, and intelligent. Second, the district court determined that there was no fair and just reason for plea withdrawal. The district court observed that Williams entered a "straight plea" with no agreement as to the sentences he would receive. It also found that, due to the passage of time, plea withdrawal would prejudice the state.

At sentencing, Williams moved for a downward durational departure from the sentencing guidelines for the offenses of attempted second-degree murder and third-degree murder. He argued that the offenses were less serious than typical offenses because he had remorse and because he had been a passenger in the Range Rover. The district court denied the departure motion. It imposed concurrent prison sentences of 214.5 months for aiding

4

and abetting second-degree attempted murder, 60 months for unlawful possession of a firearm, and 291 months for aiding and abetting third-degree depraved-mind murder—all presumptive sentences.

Following sentencing, Williams—who is now represented by new counsel—filed this direct appeal.

## DECISION

### I. Williams is not entitled to withdraw his guilty pleas.

Williams argues that he is entitled to withdraw his guilty pleas. He contends that plea withdrawal is required to correct a manifest injustice because (1) he "filed his motion to withdraw his guilty plea before the district court had accepted it," (2) the offense of aiding and abetting third-degree depraved-mind murder is not "a cognizable offense" under Minnesota law, (3) the statute prohibiting a convicted felon from possessing a firearm is unconstitutional, and (4) his trial counsel provided ineffective assistance of counsel. Alternatively, he argues that allowing him to withdraw his plea would be fair and just because his trial attorney provided ineffective assistance of counsel and because the district court improperly allowed his trial attorney and the prosecutor to establish the factual bases for his guilty pleas with leading questions.

"A defendant has no absolute right to withdraw a guilty plea after entering it." *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016) (quotation omitted). Plea withdrawal may be permitted under two circumstances. *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010).

First, a district court must allow a defendant to withdraw a guilty plea "[a]t any time" if "withdrawal is necessary to correct a manifest injustice." *Id.* (quoting Minn. R. Crim. P. 15.05, subd. 1). "A manifest injustice exists if a guilty plea is not valid." *Id.* at 94. To be constitutionally valid, a guilty plea must be intelligent, accurate, and voluntary. *Dikken v. State*, 896 N.W.2d 873, 876 (Minn. 2017). A defendant bears the burden of showing that a guilty plea does not comport with these requirements. *Raleigh*, 778 N.W.2d at 94. Whether a guilty plea is valid is a question of law that appellate courts review de novo. *Id.*

Second, a district court may allow a defendant to "withdraw a plea at any time before sentence if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. This decision is within the district court's discretion. *Raleigh*, 778 N.W.2d at 97. An appellate court will reverse the district court's decision to grant or deny plea withdrawal under the fair-and-just standard "only in the rare case" that the district court abused its discretion. *State v. Jones*, 921 N.W.2d 774, 782 (Minn. App. 2018) (quotation omitted), *rev. denied* (Minn. Feb. 27, 2019).

We first consider whether there was a manifest injustice requiring plea withdrawal. Then, we turn to Williams's argument that the district court abused its discretion in denying his plea-withdrawal motion under the fair-and-just standard.

**A.    There was no manifest injustice requiring plea withdrawal.[2]**

**1.    The district court's delayed acceptance of Williams's guilty pleas did not provide a basis for plea withdrawal.**

Williams argues that because he "filed his motion to withdraw his guilty plea before the district court had accepted it, he should have been permitted to withdraw his plea." He asserts that the district court's decision to postpone its acceptance of the guilty pleas until sentencing effectively nullified the pleas. In support of his argument, Williams relies on the Minnesota Supreme Court's 1971 decision in *State v. Loyd*, which states that a defendant may withdraw his guilty plea "as a matter of right" before the district court has accepted the plea. 190 N.W.2d 123, 125 (Minn. 1971).

We reject Williams's argument. *Loyd* is a decision that predates the adoption of the Minnesota Rules of Criminal Procedure, which provide the modern standards for guilty-plea withdrawal.[3]    Furthermore, *Loyd* is inapposite because there, unlike here, the defendant's attorney promised the defendant that he could withdraw his guilty plea if the district court refused to impose the recommended sentence, which it did. *Id.* at 123-25.

---

[2] In the district court, Williams did not argue that withdrawal of his plea was necessary to correct a manifest injustice, and he did not raise most of the issues he now raises in contending that there was a manifest injustice. However, this is not fatal to his arguments on appeal. A defendant may attack the validity of a guilty plea on direct appeal. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). We apply de novo review in considering the validity of a guilty plea for the first time on appeal. *State v. Johnson*, 867 N.W.2d 210, 214-15 (Minn. App. 2015), *rev. denied* (Minn. Sept. 29, 2015).

[3] The Minnesota Rules of Criminal Procedure were first adopted effective July 1, 1975. *In re Rules of Criminal Procedure*, No. 45517 (Minn. Feb. 26, 1975) (order).

"[O]nce a defendant has put formally before the court a valid guilty plea, he has entered it and has no absolute right to withdraw it." *State v. Nicholas*, 924 N.W.2d 286, 292 (Minn. App. 2019), *rev. denied* (Minn. Apr. 24, 2019) (quotation omitted). Notwithstanding the district court's decision to delay acceptance of Williams's guilty pleas until sentencing,[4] Williams is only entitled to withdraw the pleas under the two circumstances addressed above—to correct a manifest injustice or if the district court abused its discretion in rejecting plea withdrawal under the fair-and-just standard.

### 2. Williams provided a sufficient factual basis to support his guilty plea to the offense of aiding and abetting third-degree murder.

Williams argues that the offense of aiding and abetting third-degree depraved-mind murder is not a "cognizable offense" under Minnesota law. He contends that a person cannot intentionally encourage another person to act recklessly, and thus, the offense of aiding and abetting third-degree murder is "inherently impossible." And he maintains that, because "[t]he guilty plea contained an insufficient factual basis to sustain [his] conviction for aiding and abetting third-degree murder," he must be permitted to withdraw the plea to correct a manifest injustice.

Williams cites no Minnesota authority for his argument that a person cannot aid and abet a depraved-mind third-degree murder. Rather, his argument rests on the language of

---

[4] This court has recognized that it is "a common practice amongst district courts" to delay accepting a guilty plea until sentencing or pending the results of a presentence investigation. *See Nicholas*, 924 N.W.2d at 292 (noting that this practice is "permitted by the rules of criminal procedure"); *see also* Minn. R. Crim. P. 15.04, subd. 3(2) (authorizing a district court to reserve acceptance of a plea pending a presentence investigation).

the accomplice-liability and third-degree murder statutes and on foreign caselaw interpreting foreign statutes.

We begin our analysis by examining Minnesota's statutes to determine whether they are legally incompatible. Appellate courts "review questions of statutory interpretation de novo." *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019).

Under the accomplice-liability statute, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2020). A person "is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.*, subd. 2 (2020). Caselaw has further explained the requirements for accomplice liability. "[T]he element of 'intentionally aiding' embodies two important and necessary principles: (1) that the defendant 'knew that his alleged accomplices were going to commit a crime,' and (2) that the defendant 'intended his presence or actions to further the commission of that crime.'" *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (citing *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007)).

The crime of third-degree depraved-mind murder requires a showing that the person unintentionally caused another person's death "by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life." Minn. Stat. § 609.195(a) (2020). To satisfy the mens rea requirement of third-degree murder, the state must prove that the principal acted in disregard of a substantial and unjustifiable risk to

9

human life. *State v. Coleman*, 944 N.W.2d 469, 479 (Minn. App. 2020), *aff'd*, 957 N.W.2d 72 (Minn. 2021). Another term for the required mens rea is "recklessness." *Id.* at 478-79.

We discern no inherent incompatibility between the accomplice-liability statute and the third-degree depraved-mind murder statute. A legal inconsistency between two offenses occurs only when proof of the elements of one offense negates a necessary element of another offense. *State v. Christensen*, 901 N.W.2d 648, 651 (Minn. App. 2017). For example, the Minnesota Supreme Court has held that guilty verdicts for both first-degree premeditated murder and second-degree manslaughter are legally inconsistent because the first offense requires proof that the death was caused with premeditation and intent, and the second offense requires proof that the death was caused by negligent or reckless conduct. *Steward v. State*, 950 N.W.2d 750, 755 (Minn. 2020). Because it is not legally possible to commit the same act with premeditation and intent and also negligently, the elements of the two offenses negate each other. *Id.* However, it is legally possible for an accomplice to intentionally encourage a principal to engage in reckless conduct that results in the death of another. The accomplice's intent to aid and abet the principal's recklessness does not negate the principal's recklessness. Thus, there is no legal inconsistency in the act of aiding and abetting a third-degree depraved-mind murder.

Moreover, Williams's testimony during the guilty-plea hearing established that he engaged in such conduct. He admitted that he encouraged the driver of the Range Rover to drive recklessly in pursuit of the Durango at speeds of more than 90 miles per hour on city streets. Moreover, he admitted that he encouraged the occupants of the Range Rover to fire their guns out of the windows. Williams acknowledged that this behavior

10

endangered people on the sidewalks and in other cars, and that the driver's reckless and dangerous driving caused L.E. to strike and kill the victim. Because Williams's testimony at the plea hearing established that he knew his accomplices were committing crimes by racing through city streets and firing guns out of the car windows, and that he intended his presence or actions to further the commission of those crimes, there was a sufficient factual basis to support his guilty plea to the offense of aiding and abetting third-degree depraved-mind murder.

We are not persuaded by the cases from other jurisdictions that Williams cites in his brief. First, they are not binding authority in Minnesota. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (noting that cases from other jurisdictions are not binding). Further, they address the statutes of other states and not Minnesota statutes. Even if we do consider them, they do not stand for the proposition that aiding and abetting depraved-mind murder is an "inherently impossible" offense. In one of the cases cited, *State v. Baca*, the New Mexico Supreme Court found sufficient evidence to support the defendant's conviction for aiding and abetting depraved-mind third-degree murder, while concluding that a *conspiracy* to commit such a murder was not a valid offense. 950 P.2d 776, 781, 788 (N.M. 1997). The second foreign case that Williams cites, *Kitt v. United States*, does not concern a depraved-mind murder at all. 904 A.2d 348, 353-59 (D.C. 2006).

Finally, Williams contends that his admissions at the guilty-plea hearing provided an insufficient factual basis for third-degree depraved-mind murder because, under the caselaw, such a murder "cannot occur where the defendant's actions were focused on a specific person." *State v. Zumberge*, 888 N.W.2d 688, 698 (Minn. 2017). He notes that

11

he testified during the guilty-plea hearing that his animus was directed toward a specific person—the driver of the Durango.

However, in *State v. Noor*, the Minnesota Supreme Court explained that the mental state necessary for third-degree depraved-mind murder "cannot exist when the defendant's conduct is directed with particularity *at the person who is killed*." 964 N.W.2d 424, 438 (Minn. 2021) (emphasis added). Although Williams and the other people in his car may have intended to kill L.E., that was not the person who was ultimately killed. A.M., an innocent bystander who was uninvolved in the incident, was killed. Thus, we reject Williams's argument that his intent to kill L.E. precludes his conviction for aiding and abetting third-degree depraved-mind murder.

Williams's admissions during the guilty-plea hearing established his guilt of third-degree depraved-mind murder. He therefore is not entitled to withdraw his guilty plea to this offense for lack of an adequate factual basis. *See Jones*, 921 N.W.2d at 779 ("For a guilty plea to be accurate, a factual basis must be established showing that the defendant's conduct meets all elements of the offense to which he is pleading guilty.").

**3. Williams entered a valid guilty plea to the offense of unlawful possession of a firearm under Minnesota Statutes section 624.713 (2020), and his constitutional challenge to that statute fails.**

Williams argues that his guilty plea to the offense of unlawful possession of a firearm is invalid because the statute establishing that offense—section 624.713—is unconstitutional. He contends that he has a constitutional right to carry a handgun for self-defense, and therefore "his admitted conduct did not constitute a criminal offense."

12

"Minnesota statutes are presumed constitutional, and [a court's] power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). The party challenging the constitutionality of a statute has the burden of demonstrating beyond a reasonable doubt that it is unconstitutional. *Id.*

Williams has not satisfied his burden. His argument rests on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, where the United States Supreme Court stated that the Second Amendment to the United States Constitution protects an individual's right to carry a handgun for self-defense outside the home. 597 U.S. 1, 8-9 (2022). But *Bruen* addressed *lawful* possession of a gun. *See id.* at 71 (striking down a regulation that "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"). It did not invalidate the prohibition on unlawful possession of a firearm by a prohibited person. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 627 n.26 (2008) (recognizing that longstanding prohibitions on the possession of firearms by felons are presumptively lawful). Thus, *Bruen* is inapplicable to the circumstances here. In this case, Williams was prohibited from possessing a gun by virtue of a prior felony conviction. *See* Minn. Stat. § 624.713, subd. 1(2) (providing that "a person who has been convicted of . . . a crime of violence" shall not "be entitled to possess ammunition or a pistol or . . . any other firearm"). At the guilty-plea hearing, he admitted that he was prohibited from possessing a gun and that he possessed a gun. Thus, Williams's guilty plea to the offense of unlawfully possessing a firearm is valid.

13

**4.** **Because Williams fails to show that his trial attorney's performance was deficient, he is not entitled to withdraw his guilty pleas on the ground of ineffective assistance of counsel.**

Williams argues that his guilty pleas are invalid because his trial attorney provided ineffective assistance of counsel. He contends that his trial attorney's performance was deficient because the attorney "failed to explain . . . the potential consequences of entering a straight plea in reliance on the State's assurances" and "failed to obtain any agreement in writing from the State outlining what had been offered." Williams further alleges that his trial attorney's performance was deficient because the attorney "permitted [him] to plead guilty" to aiding and abetting third-degree depraved-mind murder, which is not a cognizable offense, and to unlawful possession of a firearm, which is based on an unconstitutional statute. According to Williams, his attorney's deficient performance prejudiced him, and in turn, caused a manifest injustice, which entitles him to withdraw his guilty pleas. *See State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) ("When an accused is represented by counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (quotations omitted)).

A criminal defendant has a constitutional right to the effective assistance of counsel. *Fort v. State*, 861 N.W.2d 674, 677 (Minn. 2015). A reviewing court evaluates an ineffective-assistance claim using the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *State v. Ellis-Strong*, 899 N.W.2d 531, 535 (Minn. App. 2017) (citing *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013)). "To prove ineffective assistance of counsel, a defendant must show that (1) his attorney's performance fell below

14

an objective standard of reasonableness, and (2) a reasonable probability exists that the outcome would have been different, but for counsel's errors." *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017) (quotations omitted); *see also State v. Jones*, 977 N.W.2d 177, 193 (Minn. 2022); *Strickland*, 466 U.S. at 687-88, 692. "Application of the *Strickland* test involves a mixed question of law and fact, which [appellate courts] review de novo." *State v. Mouelle*, 922 N.W.2d 706, 715 (Minn. 2019).

Trial counsel's performance is deficient when counsel "does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *White v. State*, 248 N.W.2d 281, 285 (Minn. 1976) (quoting *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976)). We presume that "counsel's performance fell within a wide range of reasonable assistance." *Bruestle v. State*, 719 N.W.2d 698, 705 (Minn. 2006) (quotation omitted). A defendant bears the burden of showing that an attorney's performance was deficient. *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007).

As a preliminary matter, we reject Williams's argument that his trial attorney's performance was deficient because the attorney "permitted [him] to plead guilty" to two invalid offenses—aiding and abetting third-degree depraved-mind murder and unlawful possession of a firearm. We have already concluded that Williams's guilty pleas to both of these offenses are valid. Thus, his trial attorney did not provide ineffective assistance of counsel by "permitting [him] to plead guilty" to aiding and abetting third-degree depraved-mind murder and unlawful possession of a firearm.

15

Williams's remaining claim of ineffective assistance of counsel is that his trial attorney's performance was deficient because the attorney failed to adequately explain the plea agreement or memorialize the state's promises regarding sentencing. But there is no evidence in the record to support Williams's assertions that he did not understand the implications of his guilty pleas or that there was any agreement with the state regarding sentencing. Williams did not develop any record through postconviction proceedings regarding his communications with his attorney about the guilty pleas or the alleged sentencing agreement. *See, e.g.*, *Barnes v. State*, 768 N.W.2d 359, 365 (Minn. 2009) (stating that postconviction evidentiary proceedings allow an appellant "to develop the evidence necessary to allow our court to review [an ineffective-assistance-of-trial-counsel] claim during the direct appeal").[5] And the transcript of the guilty-plea hearing contradicts Williams's claims that he did not understand the terms of the plea and that there was a sentencing agreement. At the guilty-plea hearing, Williams confirmed his understanding that he was entering a "straight plea" to the three charges in the complaint and that there was no agreement regarding sentencing. Moreover, he affirmed that he was pleading guilty because he was guilty and not because his plea was based on any promises.

---

[5] Although the "Memorandum in Support of Motion to Withdraw Plea" that Williams's trial attorney filed in the district court references pre-plea discussions with the prosecutor about a possible sentencing recommendation, we do not construe this legal memorandum as evidence. *See State v. McCoy*, 682 N.W.2d 153, 158 (Minn. 2004) (noting that "arguments of attorneys are not evidence") (quotation omitted); *see also Tang v. I.N.S.*, 223 F.3d 713, 720 (8th Cir. 2000) (stating that factual assertions in a brief were "argument of counsel and not evidence").

The record does not support Williams's claim that his trial attorney provided deficient representation when he failed to explain the plea agreement to Williams or to memorialize promises regarding sentencing. Because Williams has not shown that his trial attorney's performance was deficient, his ineffective-assistance-of-counsel claim fails. *See Hawes v. State*, 826 N.W.2d 775, 783 (Minn. 2013) (noting that a reviewing court need not address both parts of the *Strickland* test if one is determinative).

**B.** **The district court did not abuse its discretion in denying Williams's motion to withdraw his guilty plea under the fair-and-just standard.**

Williams argues that the district court abused its discretion by denying his motion to withdraw his guilty plea under the fair-and-just standard. He reasserts his claims about his attorney's deficient performance, alleging that the attorney allowed him to plead guilty to invalid offenses and failed to adequately explain or memorialize Williams's plea agreement with the state. He also argues that plea withdrawal would have been fair and just because the district court allowed his attorney and the prosecutor to use leading questions to establish the factual bases for his pleas.

The fair-and-just standard is "a less demanding standard than the manifest-injustice standard, but it does not permit withdrawal of a guilty plea for simply any reason." *State v. Townsend*, 872 N.W.2d 758, 764 (Minn. App. 2015) (quotation omitted). In considering a motion to withdraw a guilty plea under the fair-and-just standard, a district court considers: (1) the defendant's asserted reasons for seeking plea withdrawal and (2) whether plea withdrawal prejudices the state. Minn. R. Crim. P. 15.05, subd. 2. The defendant bears the burden of advancing sufficient reasons to support plea withdrawal.

17

*Raleigh*, 778 N.W.2d at 97.  If the defendant meets that burden, the state must show that it will be prejudiced.  *Id.*

Before the district court, Williams argued that he was entitled to withdraw his guilty pleas because he did not understand the plea agreement and the state failed to honor the plea agreement.  The district court rejected Williams's reasons for plea withdrawal, observing that Williams had entered a "straight plea" with no agreement.  Additionally, the district court determined that the state would be prejudiced if Williams withdrew his guilty pleas due to the passage of time.  The district court noted that Williams waited nearly nine months to move to withdraw his guilty pleas.  During this time, witness memories had likely faded.  The district court also observed that the victim's family was entitled to finality.  We discern no abuse of discretion in the district court's ruling.

Moreover, we have already rejected Williams's ineffective-assistance-of-counsel claims.  Because these claims lack merit, they do not provide a fair-and-just reason for Williams to withdraw his guilty pleas.

Finally, we consider whether Williams is entitled to withdraw his guilty pleas because the district court allowed his attorney and the prosecutor to use leading questions to establish the factual bases for the offenses.  A guilty plea must be supported by a proper factual basis in the record.  *Sanchez v. State*, 868 N.W.2d 282, 289 (Minn. App. 2015).  "The district court typically satisfies the factual basis requirement by asking the defendant to express in his own words what happened."  *Raleigh*, 778 N.W.2d at 94.  The Minnesota Supreme Court has "cautioned against the use of exclusively leading questions to establish a proper factual basis for a guilty plea."  *Nelson v. State*, 880 N.W.2d 852, 860 (Minn.

18

2016) (quotation omitted).  But "a defendant may not withdraw his plea simply because the court failed to elicit proper responses if the record contains sufficient evidence to support the conviction."  *Raleigh*, 778 N.W.2d at 94.

To establish the factual bases for Williams's offenses, the attorneys relied extensively on leading questions.  However, Williams's admissions during the guilty-plea hearing amply support his convictions for the three offenses.  Accordingly, we conclude that the attorneys' use of leading questions in establishing the factual bases for the offenses does not alone provide a ground for plea withdrawal.

In sum, Williams is not entitled to withdraw his guilty pleas under either the manifest-injustice or fair-and-just standards.  We therefore affirm his convictions.

## II. The district court did not abuse its discretion in denying Williams's motion for a downward durational departure.

Williams argues that the district court abused its discretion by denying his request for a downward durational departure from the Minnesota Sentencing Guidelines.  He argues that a departure was warranted for his conviction of third-degree depraved-mind murder.

The Minnesota Sentencing Guidelines prescribe a range of sentences that is presumed to be appropriate, and the sentencing court "must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances that distinguish a case and overcome the presumption in favor of the guidelines sentence."  *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (quotation omitted); *accord* Minn. Sent'g Guidelines 2.D.1 (2021); *see also State v. Solberg*, 882

19

N.W.2d 618, 623 (Minn. 2016) (stating that the sentencing guidelines seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing for felony crimes" (quotation omitted)). Sentencing decisions are within the wide discretion of the district court. *See Soto*, 855 N.W.2d at 307-08 (recognizing that appellate courts afford the district court "great discretion" in sentencing).

Williams was convicted of aiding and abetting third-degree depraved-mind murder, which has a maximum prison sentence of 25 years. *See* Minn. Stat. § 609.195(a). At the time of sentencing, Williams's criminal-history score was 14. Given this criminal-history score, the presumptive sentence was 243 months' imprisonment, with a range of 207 to 291 months' imprisonment. The district court sentenced Williams to 291 months in prison.

Williams argues that this sentence was an abuse of the district court's discretion because Williams's conduct was "far less serious than that of the typical third-degree, depraved mind murder defendant." In addition, he points to the prosecutor's statement at sentencing that the "State is recommending 207 months, which is the bottom of the box" for that offense. However, any sentence within the presumptive guidelines range is a presumptive sentence. *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010) (stating that a reviewing court "will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range"), *rev. denied* (Minn. July 20, 2010). The district court was within its discretion to reject the state's recommended sentence and to impose another sentence within the presumptive range.

Williams further asserts that the district court abused its discretion because the district court stated that its sentence was based on Williams's "history and [his] involvement in this very serious offense"—which are facts that are already accounted for by the presumptive sentence. He also challenges the district court's statement that Williams likely fired a gun from the Range Rover as contrary to the evidence. We agree that some of the district court's statements were inartful. But we are not convinced that these remarks show that the district court relied on improper factors in deciding to impose a presumptive sentence. Instead, the transcript of the sentencing hearing demonstrates that the district court considered the record as a whole when it imposed the presumptive sentence. And we will affirm the decision to impose the presumptive sentence when "the record shows that the [district] court carefully evaluated all the testimony and information presented before making a determination." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. Sept. 17, 2013). Because we are satisfied that the district court acted within its wide discretion in denying Williams's motion for a durational departure and imposing a guidelines sentence, we affirm.

**Affirmed.**